Hunt, J.
The demurrers to the petitions in each of the above cases were heard together and will be so considered. Both are mandamus eases and involve the construction of the statutes providing for the appointment of a "building commission” to build court houses and other county buildings, the first case being against *578 the'county auditor and the second against the members of the board of county commissioners.
The petition in the first case alleges that the relators, James A. Green, Thomas W. Allen, Braxton W. Campbell and George F. Dieterle, are citizens of Cincinnati and taxpayers of Hamilton county; that on February 21, 1912, they were duly appointed by the common pleas court as members of a “building commission,” of which the three members of the'board of county commissioners were ex-offi.cio members, which commission was charged with the duty of building a court house and jail for Hamilton county, and that they have duly qualified as such; that on March 22, 19.12, a meeting of said building commission .was held at the office of the county commissioners; that the defendant, who was and is the duly elected and qualified auditor of the said county, was requested to act as clerk or secretary of .said commission and keep a “full and accurate record of all proceedings of said commission,” as provided by Section 2342, General Code; that on March 29, 1912, the defendant declined said request and refused and has ever since refused to so serve, claiming that it would not be legal for him so to do; that such refusal seriously interferes and prevents the carrying out of the objects for which the commission was created. A writ of mandamus is prayed for commanding the defendant to. act as such clerk or secretary.
The petition in the second ease sets up the character and the appointment of the relators, and that the defendants, M. P. Scully, H. H. Lippelmann and Stanley Struble are the duly elected and qualified commissioners of Hamilton, county; that on March 22, 1912, the relators met with the defendants at the office of the county commissioners and attempted to proceed with the performance of their duties and particularly attempted to effect a temporary and permanent organization of said “building commission” by the election of a president or chairman or presiding officer and of a vice-president or vice-presiding officer; that said defendants and each of them refused to participate in any proceeding relating to a temporary or permanent organization of said commission and refused to vote for the election of *579 a president or chairman, or presiding officer, or vice-president or vice-presiding officer for said commission; that on March 26, 1912, a subsequent meeting was held at which the relators and the defendants were present, and said defendants again refused to participate in said proceedings' and have ever since refused so to do, claiming that one of thgir members, Stanley Struble, who was president of the board of county commissioners, was by virtue of his office president of said “building commission”; that such act of the defendants is unlawful and their said refusal seriously hinders and prevents the carrying out of the objects for which the commission was created. A writ of mandamus is prayed for commanding the defendants to participate in the proceedings relating to a temporary and permanent organization of said commission and compelling defendants to vote for a presiding officer and vice-presiding officer.
An alternative writ was issued in each ease, and the defendants in each case have filed demurrers to the petition.
Before considering the legal question raised by the demurrers in these cases, it would not be irrelevant to consider some facts of common knowledge.
Prior to the general election in November, 1908, the commissioners of this county adopted a resolution declaring the necessity of a new jail building and of the levying of a tax for such purpose. The question of the levying of such tax was submitted to the people at such general election and a vote in favor of such levy was polled. The county commissioners, assuming that they were authorized to proceed, caused plans of such jail building to be in part prepared, but before proceeding further, they were advised that Section 2333, General Code, providing for the creation of a building commission was applicable. Thereupon a certificate of the result of such election was certified to the court of common pleas and such court on January 9, 1911, appointed William Griffith, George Schott, Michael Devanney and John E. Bruce to act in connection with the county commissioners as a “building commission” for the building of such jail. Such building commission entered upon their duties, and *580 the west half of the square bounded by-Main, Sycamore, Canal and North Court streets, having' been acquired by the county commissioners for such jail, plans and estimates of such jail were prepared; but the necessity of a new court house becoming 'manifest, and the Legislature of Ohio having at last passed an act permitting the much desired change of the canal to a boulevard, the jail commissioners by resolution' recommended the building of a new court house with a jail as part thereof and the acquiring of the east half of said square bounded by Main, Sycamore, Canal and North Court streets for use in connection with the west half already acquired, and the present court house lot, for such building. Having called for and having obtained an expression of opinion by the bar association, the civic organizations and various citizens of the county in regard thereto, said jail commission asked the county. commissioners to take the action necessary to build such new court house and jail building combined, and decided to postpone any further action on their part in the building of a separate jail building until the county commissioners could act. The county commissioners in pursuance of such action of the jail commission declared the necessity of a new court house building with a jail as part thereof and ordered'the question of the issue of bonds for such purpose in the sum of $2,500,000 to be submitted to the people at the general election in November, 1911. The vote was in favor of the issue of such bonds and, in due time thereafter, the court of common pleas in accordance with Section 2333, General Code, appointed James A. Green, George F. Dieterle, Thomas W. Allen and Braxton W. Campbell to act with the county commissioners as a building commission for the building of such court house with a jail as part thereof. Various civic organizations of the city requested that electors be appointed as members of the commission who would agree to serve without compensation. The court secured such persons and made the appointment in connection with a declaration of such persons to so serve. The latter' commission is commonly known as the court house commission.'The jail commission has taken no further action, and in doing the various things which in-effect precluded them from *581 proceeding with, the building of the jail, they were manifestly animated by an unselfish regard for the public good, because by their action the appointed members of such commission precluded themselves, in a large part at least, from that compensation to which.they would have been entitled under the law if they had proceeded with the building of the jail.
During all this time Mr. Stanley Struble was one of the county commissioners, and is now president thereof, and ex-officio a member of both the jail and the court house commissions. To his efforts to a large extent, in connection with the public spirited conduct of the jail commissioners and other citizens, must be attributed the fact that a new county building containing a new court house and jail is now possible and probable in the near future.
There is no question but that the general authority to acquire land for, and the erection and repair of court houses, jails, etc., is lodged in the county commissioners under Section 2419, General Code, subject to certain conditions as to the vote of the people; where the building is to cost more than fifteen thousand dollars, Section 5638, General Code; or where the repair thereof costs more than ten thousand, Section 5645; and certain restrictions as to the approval of plans, Section 2348, General Code; and methods of contracting, Sections 2353, 2354, 2364, General Code; and that upon compliance with the statutory conditions they have the right to issue bonds for such purpose, Section 2434, General Code.
Subsequent to the passage of the acts of which Sections 2419-2348 were a part, Section 2333 together with Sections 2334 to 2344, General Code, in their original form as the act of April 18, 1904 (97 v. 111), was passed. Not by way of amendment or supplement to any prior act, but as a separate and distinct act with a separate and distinct title, to-wit: "an act to provide for a commission for building court houses. ” It is not claimed that the amendment of March 4, 1906 (98 v. 53), affects the question now under consideration. As to the changes made by the code, it is a general rule that changes in arrangement or *582 phraseology made in a general codification or revision of the statutes, do not change the legislative intent as expressed in the original acts, unless such change is clear and certain. The work of the codifying commission was adopted by the Legislature and enacted as a general code, but the duty and powers of the codifying commission were prescribed by the act of April 2, 1906 (98 v. 221), although they did not report for several years. They seem to have exceeded their instructions in the insertion of the final clause of Section 2338, General Code, making the chapter relating to the erection of public buildings applicable to such commission after the Supreme Court in the case, of Mackenzie v. State, 76 O. S., 369, had rendered a decision to the contrary. That, however, does not affect the application of the general rule to the present case. The building commission act in Section 1 provides that:
“"When the county commissioners of any county have determined under and by authority of the statutes of the state of Ohio to erect a court house which shall cost to exceed twenty-five thousand dollars and after the question of issuing the bonds of such county for the construction of said court house or other county building, has been submitted to a vote of the electors of the county, and said question has been determined by said electors in the affirmative, said county commissioners shall within thirty days after said election has been held and the results thereof determined, apply to the judge of the court of common pleas for said county, who shall appoint four suitable and competent freehold electors of said county, not more than two of whom shall be of the same political party, who shall in connection with the county commissioners, constitute a building commission and who shall serve until the completion of said court house, as contemplated herein.”
The conditions precedent to the operation of said act according to its terms were two: first, when a court house was to be erected which would cost more than twenty-five "thousand dollars ; second, when the question of the issuing of bonds for the construction of the court house or other county building has been approved by the vote of the electors.
If the building is not to cost more 'than twenty-five thousand dollars, or if bonds are not to .be issued for such purpose, but *583 the money therefor is to be raised without the issue of bonds, apparently such act does not apply and such seems to have been the view originally taken by the county commissioners in regard to the jail building.
The two conditions, however, existing, to-wit, a cost of more than twenty-five thousand dollars, and to be paid for by the issue of bonds, the act requires the creating of a “building commission” for the building of a court house or other county building, and defines the powers of such commission — prescribes their duties and operates as an exception to the general statutory provisions applicable otherwise to such particular subject-matter.
The Supreme Court in Mackenzie v. State, 76 O. S., 364, decided that the method of building a court house by a building commission created under-the act was independent of the general provision of the statutes applicable to the building of a court house by the county commissioners alone, whatever may be the effect of the subsequent insertion of the last clause of Section 2338 by the codifying commission. This independence is not in any mere method by the county commissioners but in the agency of the people (same case p. 374). The independence of said building commission is. not affected by the requirement of the General Code, that they are to be governed by the provision of the chapter relating to the erection of public buildings. On the contrary, such clause is a recognition and acceptance of their independence, as established by the case of Mackenzie v. State, supra, because if for the purpose of building a court house the building commission were merely a changed form of the body known as the county commissioners, or the appointed members were simply auxiliary to the county commissioners as claimed, such provision of the General Code would have been entirely unnecessary, the county commissioners without such provision being governed by the provisions relating to the erection of public buildings — Section 2362, General Code.
The building commission by Sections 2338, 2340 and 2341, General Code, is given the power to approve and adopt plans, drawings, estimates, etc. If the building commission is appointed to build a court house or jail, Section 2348 becomes in *584 applicable as being in conflict with special statutory provisions pertaining to such approval. If a commission is appointed to build an infirmary, Section 2349 becomes inapplicable. Similarly as to children’s homes, Section 2351, and as to any other county building, the approval of the plans of which are otherwise provided for by prior or general statutes. The only sections of the act which have been cited as requiring the building commission to do something which might inferentially be considered as being an act of the board of county commissioners, considering such board as simply enlarged for the purpose of constituting it a building commission, are Sections 2341 and 2342, which require that the votes upon certain resolutions shall be “by yeas and nays, recorded on the journal of the county commissioners,” and that “full and accurate records of all proceedings of the commission shall be kept by the county auditor upon the journal of the county commissioners.”
If the building commission was simply the board of county commissioners enlarged by the inclusion therein of the appointed members as auxiliaries or otherwise when the appointed members were meeting with the county commissioners, these provisions would be unnecessary, because already provided for by Section 2406, General Code. There is no legal or physical impossibility or difficulty in the journal of the county commissioners being used as the journal.of the building commission. In fact, there is some reason for so doing, because the building commission being a.temporary body, if a certification of their minutes be required before or after said commission ceases to exist, Section 2407, General Code, which provides that, “it shall be duly certified by the president and clerk and shall be received as evidence in every court in the state,” if applicable to the building commission, would provide statutory evidence of the proceedings of the commission. The “it” is the record of the proceedings of the county commissioners provided for by Sections 2406 and 2407, and any incongruity in the president and clerk of the county commissioners certifying to the record of the proceedings of the building commission is more of an argument in favor of the inapplicability of Sections 2407, 2409 and the other *585 sections pertaining to the organization of the county commissioners, than in favor of the mere designation of a continuous county record as the place for the record of the proceedings of the building commission, eliminating the independent existence of the building commission otherwise clearly contemplated by the statutes specifically applicable to their duties and method of' doing business.
The record of the proceedings of the county commissioners by Section 2407 when the board is not in session is by said section required to be kept in the office of the auditor. Section 2409 provides for the appointment by the county commissioners of a clerk in place of the auditor, who by Section 2566, is otherwise their secretary, but makes no change in the provision as to where this record of the proceedings of the board of county commissioners shall be kept. So that constructively, at least, such record when the board is not'in session is kept in the auditor’s office. There is therefore, no impracticability in such record book being used by the auditor in recording the proceedings of the building commission, especially as the members of the county commissioners, being members of the building commission, are not to be in session when the building commission is in session. In view of the recognized practice in courts and other legal bodies of dividing up their journals into different parts so that work may be done upon all such parts at the same time, it is admitted that no inconvenience will arise by reason of a part of the journal being used by the county commissioners and part by the building commission.
Sections 2341 and 2342, General Code, originally part of the building commission act, and Section 2409, a part of the chapter pertaining to the county commissioners, are as follows.-
Section 2341. “Resolutions for the adoption or alteration of plans or specifications, or award of contracts, hiring of architects, superintendent or other employes and the fixing of their compensation, the approval of bonds, and the allowance of estimates shall be in writing and require for their adoption the votes of five members of the commission, taken by yeas and nays recorded on the journal of the county commissioners. When *586 signed by five members of thé commission the county auditor shall draw his warrant on the county treasurer for the payment of all bills and estimates of such commission.” (97 v. 113, Section 4.)
Section 2342. “Full and accurate records of all proceedings of the commission shall be kept by the county auditor upon the journal of the county commissioners. He shall carefully preserve in his office all plans, drawings, representations, bills of material, specifications of work and estimates of costs in detail and in the aggregrate pertaining to the building.” (97 v. 113, Section 5.)
Section 2409. “If such board finds it necessary for the clerk to devote his entire time to the discharge of the duties of such position, it may appoint a clerk in place of the county auditor and such necessary assistants to such clerk as the board deems necessary. Such clerk shall perform the duties required by law and by the board.” (R. S., Section 845.)
The commissioners of Hamilton county have availed themselves of Section 2409 and have appointed a clerk to take the place of the auditor as their secretary, and it is argued that by reason thereof said clerk should perform the duties specifically enjoined upon the auditor under Sections 2341 and 2342. In addition to the fact that the building commission act is a later act and charges such duties upon the auditor specifically and not upon the secretary or clerk of the board of county commissioners, and the further fact that Section 2409 is by its terms and contest applicable only to the duties of the auditor in connection with the proceedings of the county commissioners, Section 2409 also contemplates that such duties of the clerk shall be such as to require him “to devoté his entire time” to such duties, leaving no time for him to act for the building commission. The Legislature therefore provided that the auditor should act as recording officer of the building commission. For these additional duties he can adequately provide by the appointment, if necessary, of a deputy under Section 2563.
The recording officer of the building commission is therefore the county auditor, or a deputy appointed by him for such purpose.
*587 The building commission and the board of county commissioners, whatever names may be applied to the two bodies or entities, by reason of the difference in their constituent members, all of equal authority, are different bodies, or boards or entities, and as such in so far as not otherwise specifically provided by statute, should and have therefore the right to conduct their business in the ordinary way in which a separate body consisting of seven members charged with a great public .duty and entrusted with the expenditure of several millions of public money and empowered to determine questions of permanent and great. importance to the community, would and should conduct their proceedings, so that a full, accurate and orderly record could be kept by the auditor of their proceedings. No method has been suggested or can be suggested for accomplishing these results, except the ordinary parliamentary methods which involve a presiding officer and recording officer.
The statute designates a recording officer, to-wit, the auditor. The general statutes provide for an accounting officer and a disbursing officer, but make no provision for a presiding officer. The building commission must therefore, in some proper way, designate such presiding officer.
If the acts of the building commission were merely ministerial in character, the concurrence of a mere majority, except where the statutes otherwise provide, would be the action of the commission without such concurrence being at a meeting of the members as the commission. But as the duties of the commission involve the exercise of judgment and discretion, a meeting of the commission at which all members shall be actually or constructively present, is necessary in order that there may be full consultation and discussion, after which each member might exercise his best judgment before action. This makes a meeting necessary. A. & E. Ency., Vol. 23, page 368; McCortie v. Bates, 29 O. S., 419-422; State, ex rel, v. Wilkesville Tp., 20 O. S., 288-293; Merchant v. North et al, 10 O. S., 252-258.
An orderly meeting so conducted that the auditor can properly perform his duty to record the proceedings is equally necessary.
*588 Such, being the powers of the building commission and the duties of the auditor as its recording officer, should a writ of mandamus be issued in the cases at issue?
The duty of the auditor being clear and absolutely necessary to the commission in the performance of its public duties, a writ should issue in the first case requiring him to attend in person or by deputy and record the proceedings of the commission.
The building commission has not attempted to perform any of its duties except pertaining to its necessary organization. The commission consists of seven members, each member having equal-power and authority. The commission itself is charged with certain duties involving the exercise of judgment and discretion by each of its members. The statute does not specifically provide for its necessary organization. The general rule applicable to boards, commissions and similar bodies or entities of a definite membership therefore applies, unless the statute otherwise specifically provides, to-wit, that a quorum consists of a majority of its members, and that such quorum, due notice having been given of the time and place of meeting to all members, can exercise the powers of the commission; and further, that a majority of such quorum is the action of the body or commission.
If the meeting is held at the proper time and place and after statutory notice has been given, or if the statute does not provide for the notice, then after reasonable notice, and if members refuse to attend, unless their absence makes a quorum impossible, or if they attend or refuse to vote, such refusal to attend or to vote does not preclude the vote of the majority of those voting upon the motion or resolution from being the action of the commission, even though such majority is less than a majority of the members of the entire commission. Meacham on Public Officers, Section 572; Merchant v. North et al, 10 O. S., 252-258; State, ex rel, v. Wilkesville, 20 O. S., 288-293; State, ex rel, v. Schinnock, 37 O. S., 227.
Under such rules, all the members of the commission having been present and there being no claim that the county commissioners refused to attend any necessary meeting, the relators consisting of a majority of the commission, have themselves full *589 power to organize the building commission, éven though the county commissioners refuse to vote upon such organization. The reason of their refusal if persisted in, is and would be immaterial.
The four relators, therefore, unless they divide equally, which is not alleged, are not precluded from electing a president or presiding- officer, nor from taking any other action not otherwise provided for by statute and necessary to a proper organization. If the county commissioners refuse to vote upon any resolution requiring the affirmative vote of five members, or if after due notice, such county commissioners refuse to attend any meeting at which such resolution is to be voted upon, then a writ of mandamus would properly issue compelling them to attend, and by their vote exercise the discretion vested in them by law, in accordance with general principles and rules laid down in the following cases: Atty-Gen. v. Lawrence, 11 Mass., 90; Commonwealth v. Ayers, 5 Pa. Dist. Rep., 575; State v. County Comrs., 22 Fla., 29; Wampler v. State, 148 Ind., 557.
However, it is not alleged, and certainly will not be presumed that the county commissioners will not perform their full duty in attending the meetings of the commission, or in the conscientious exercise of the duty to vote or act upon any matter upon which the statute requires the affirmative vote of five members of the commission.
The refusal of the county commissioners to vote upon questions of mere organization, upon the facts alleged in the petition, does not therefore interfere with the performance by the building commission, of its statutory duties, and the relators neither as tax-payers nor as members of the commission have the right to require the county commissioners to do that which is unnecessary, nor that which if not done would not be prejudicial. State v. Buckham, 4 C. C., 246.
The writ of mandamus prayed for in the second case will therefore be refused.