RATNER, TRUSTEE, ET AL. *v.* CITY OF RICHMOND ET AL.

[No. 20,100. Filed July 13, 1965. Rehearing denied
September 23, 1964. Transfer denied January 12, 1965.]

*Cadick, Burns, Duck & Neighbours and Floyd W. Burns,* of Indianapolis, and *Griffis, Griffis & Tripp and George H. Tripp,* of Richmond, for appellants.

*Harlan, Harlan, Schussler & Keller, Denver C. Har-*

*lan,* and *Marlin K. McDaniel,* city attorney, all of Richmond for appellees.

KELLEY, J.—Appellants, by their amended complaint, seek to enjoin the enforcement of an ordinance No. 1972—1962 of the City of Richmond, which amends the Master Plan Zoning Ordinance of that city, and rezones described real estate and property owned by the appellees Andrew F. Scott, Martha H. Scott, and Ruth E. Scott, from "A" and Suburban Residential to General Business in order to provide for the construction of a new shopping center.

Appellees demurred to the amended complaint on the ground that it does not state facts sufficient to constitute a cause of action. One reason advanced in support of the demurrer is that the amended complaint alleges no property or civil rights of the appellants which will be violated by the enforcement of the alleged invalid ordinance. The court sustained the demurrer and appellants refused to plead over. Judgment followed that appellants take nothing by their action.

In order to invoke the jurisdiction of equity to determine the validity of an ordinance, something more than the mere allegation of the invalidity of the ordinance must appear. It must first be asserted that some property or civil right of the complainant will be infracted.

The involved complaint, in pertinent substance, alleges that "individuals" interested in developing a new shopping center petitioned the common council of the City of Richmond for an amendment of the Master Plan Zoning Ordinance to rezone the Scott property in order to provide for the construction of the shopping center; that the petition was referred to the Plan Commis-

sion; that the Plan Commission gave notice and held a public hearing at which appellants and others, as remonstrators, were represented by counsel and were given full opportunity to present evidence and offer argument; that the Commission took the matter under advisement and deferred its decision until February 26, 1963; that the proponents of the petition requested additional time to be heard on February 26, 1963 and no public notice of the "rehearing" on that date was given; that counsel for the "remonstrators" appeared on said date and objected by written motion to the "rehearing" on the ground of improper notice, which motion the Commission refused to consider. Complaint is made that at the February 26, 1963 meeting, nine of the eleven members of the Commission were present and voted five to four in favor of the proposed amendment which, it is alleged, were insufficient to authorize official action of the Commission under the provisions of §53-719, Burns' 1951 Replacement requiring action by a majority of the members of the Commission.

It is further alleged that the Commission made no findings or determinations but through its secretary communicated the result of said vote to the City Council and that the latter, consisting of nine members, at its meeting on the third Monday of March, 1963, voted six to three to adopt the proposed "recommended" amendment; that if the vote of the Commission be treated as a rejection of the amendment, then the ordinance is void since under the provisions of §53-765, Burns' 1951 Replacement, a three-quarters vote of the members of the Council was required to override the adverse recommendation of the Commission.

The two rhetorical paragraphs of the amended complaint concerning appellants' interest in the subject matter are set forth, for clarity, in haec verba, to-wit:

"(8) Plaintiffs bring this action in behalf of themselves and all other owners and operators of businesses and business properties in the downtown-business area of Richmond, Indiana, the owners of real estate in the immediate vicinity of the downtown business section of Richmond, Indiana, and the owners and operators of businesses and business properties in the existing Shopping Center at U. S. Highway 40 and Garwood Road, similarly situated and constituting a class too numerous to name specifically. Plaintiff Albert B. Ratner, as Trustee, is the owner of the real estate lying to the east of the Scott property and across Garwood Road and south of U. S. Highway 40, which property is zoned for business and is utilized as a Shopping Center. The owners and operators of the businesses located in said Shopping Center are lessees of Plaintiff Ratner. Plaintiff Albert B. Ratner, Trustee, and said lessees have invested substantial sums of money in said Shopping Center and in developing the same. The said real estate, the leases and the business interests incident thereto constitute valuable property rights. Plaintiff Brouse Rinehart is the owner and operator of a commercial business property located in the downtown business section of the City of Richmond and has substantial sums of money invested therein and has a substantial and valuable property interest therein and in the preservation and normal expansion of said downtown business section. There are numerous downtown business merchants situated similarly to Plaintiff Rinehart, including Plaintiff Al Birck, who is also the owner and operator of a commercial business and business property in said downtown business section. In addition, Plaintiff Al Birck is the owner of residence properties located in the area immediately adjoining the downtown business section of Richmond. The value of said residence properties reflect and are enhanced by the elements of said properties' nearness to said downtown shopping area and their availability for normal expansion of the commercial and business area of the City of Richmond. The named plaintiffs and the other members of the class represented by them are taxpayers of the City of Richmond and as such

have an interest in the integrity and preservation of the said Master Plan Zoning Ordinance and interested in amendments thereto being made only in accordance with law."

. . . . .

"(23) If such shopping center or other commercial businesses are constructed on the Scott property across the road from the existing Shopping Center and on property presently legally zoned for residence but purportedly, though illegally, zoned for business, as above alleged, there would result an over-development and concentration of shopping center, creating traffic congestion and confusion in the area around the existing Shopping Center and bringing about vacant and distressed retail store locations in the downtown Richmond business section, all of which will be detrimental and damaging to the downtown property values and business interests and detrimental and damaging to the business property values and interests in the existing Shopping Center, such as the properties and interests of the named Plaintiffs and all others similarly situated. In addition, such persons thus would be subjected to illegal competition and interference with their established businesses resulting from the illegal zoning of the property herein alleged. All of the above will be to the great and irreparable damage of Plaintiffs and for which they have no adequate remedy at law for the protection of their property rights and they have no remedy other than this proceeding by which to preserve the integrity of the said Master Plan Zoning Ordinance and prevent amendment thereof through illegal and unauthorized action and proceedings."

It is radiantly clear that this complaint fails to state facts sufficient to invoke the jurisdiction of equity. Appellants allege no right, title, or interest in or to any part of the real estate intended to be rezoned. Consequently, the amendment involved in this controversy does not constitute a taking of any of their property.

The only damage or injury sought to be alleged by appellants may be termed resultant and problematical, that is, that their business interests will be adversely affected and interfered with in futuro, as a result of competition and that an overdevelopment and concentration of shopping centers with congestion and confusion "around the *existing* shopping center" owned by the appellant, Albert B. Ratner, as Trustee, (emphasis supplied), will result. Further, that this additional shopping center and the overdevelopment of the shopping centers will bring about vacant and distressed retail store locations in the business section of Richmond. There is no allegation, however, that appellants, or any of them, own, lease, or possess any of the retail stores which they say will be distressed or made vacant. In short, their only claim of injury is that they would be "subjected to illegal competition and interference with their established businesses" if the new shopping center is permitted. No facts are alleged which support the charge that the competition would be "illegal". There are no allegations that appellants, or any of them, possess any franchise or purchased licensed rights which will be violated or unlawfully infringed by the objected to amending ordinance authorizing the new shopping center.

> "Lawful interference with business as a result of the economic law of competition cannot be enjoined . . . . . . . and an unauthorized act which does not infringe on another's right may not be enjoined merely because it will enable a third person to enter into competition with that other." 43 C. J. S., Injunctions, §138a, notes 47 and 54, on pages 685 and 686.

It is alleged that the appellant, Birck, owns a residence in an area adjoining the downtown business section of Richmond and that the value thereof is enhanced

by its nearness to said downtown business section and "their" availability for normal expansion of the business area of Richmond. But in what way or manner the value of the residence of said appellant is or may be damaged, lessened, depreciated, or affected by the proposed shopping center is left undisclosed.

It is also alleged in the amended complaint that appellants, as taxpayers of Richmond, have an interest in the "integrity and preservation" of the Master Plan Zoning Ordinance and in the amendments thereto being made "in accordance with law." Such "interest", however, in the Master Zoning Ordinance and the amendments thereto is not sufficient of itself, standing alone, to invoke the power of the court of equity to enjoin the operation of the amending ordinance. There must exist, or be alleged to exist, some property or civil right which allegedly will be violated by the enforcement of the ordinance or a statement of circumstances showing that a great and irreparable injury will result to the complainant by the enforcement thereof. 16 I. L. E., Injunction, §75, notes 40 and 41, page 54; *Indianapolis Market Association et al.* v. *City of Indianapolis et al.* (1934), 207 Ind. 356, 192 N. E. 754; *Males, Mayor* v. *Elbert* (1932), 203 Ind. 512, 180 N. E. 193; 28 Am. Jur., *Injunctions*, §190, page 694.

The complainant must show that enforcement of the ordinance will affect his personal or property rights, and that it will cause him personal, direct, and irreparable injury, and not merely that he suffers in some indefinite way in common with people generally. 28 Am. Jur., *Injunctions*, §191, page 696. *Massachusetts State Grange* v. *Benton* (1926), 272 U. S. 525, 71 L. Ed. 387. When the enforcement of the invalid ordinance will require the expenditure of pub-

lic money, a taxpayer may maintain an action to enjoin such enforcement, but not where the statute has no force or effect prejudicial to the complainant as a taxpayer. 28 Am. Jur., *Injunctions*, §191, notes 17 and 18, page 697. The amended complaint at hand contains no allegations that the enforcement of the complained of ordinance will require the expenditure of public funds nor that any of the tax money paid by appellants as taxpayers is or will be involved in the subject matter of the ordinance.

In our opinion the challenged amended complaint fails to state facts sufficient to justify the Wayne Circuit Court to exercise its equitable jurisdiction and grant the prayed for injunctive relief.

The judgment appealed from is affirmed.

Mote and Pfaff, JJ., concur.

Hunter, C. J., dissents with opinion to follow.

### DISSENTING OPINION.

HUNTER, C. J.—I respectfully dissent from the main opinion in this cause for the reason that I do not believe the Appellate Court has jurisdiction to determine this case. In the main opinion it is readily apparent that the opinion turns on the question of injunctive relief which in my belief is not the principal question presented either at the trial court or at this level. In the majority opinion it seems to me that the main and principal question has been evaded and that the opinion is based upon a general rule of law that there must exist or be alleged to exist some property right which allegedly will be violated by enforcement of the ordinance and while this is a correct statement of the general rule of law, nevertheless it is my opinion that the appellants (plaintiffs below) stated a cause of action

in their amended complaint at least sufficient to withstand a demurrer filed thereto.

It is stated in the main opinion "The complainant must show that enforcement of the ordinance will affect his personal or property rights, and that it will cause him personal, direct and irreparable injury, and not merely that he suffers in some indefinite way in common with people generally." It is further stated therein "it is radiantly clear that this complaint fails to state facts sufficient to invoke the jurisdiction of equity . . . consequently the amendment involved in this controversy does not constitute a taking of any of their property . . . " and "The only damage or injury sought to be alleged by appellants may be termed resultant and problematical . . . "

The amended complaint may be summarized as follows: plaintiffs (appellants) bring this action in behalf of themselves and other owners of businesses and business properties in downtown Richmond, the owners of real estate in the immediate vicinity of the downtown business section, and the owners and operators of businesses and business properties in the existing shopping center. Appellant Ratner, as trustee, is the owner of the real estate lying to the east of the Scott property. The Ratner property is zoned for business and utilized as a shopping center. The owners and operators of businesses in the existing shopping center are lessees of Ratner. The latter and his lessees have invested substantial sums of money in the existing shopping center and in developing the same. The Ratner real estate, the leases, and the business interests incident thereto constitute valuable property rights. Appellant Rinehart is the owner and operator of commercial business property in downtown Richmond and has substantial sums of money invested therein and has a valuable property in-

terest therein and in the preservation and normal expansion of said downtown business section. Appellant Birck has a similar property interest and in addition he is the owner of residence properties located in the area adjoining downtown business section of Richmond. The value of said residence properties reflect and is enhanced by the elements of said properties' nearness to the downtown business section and their availability for normal expansion of the commercial and business area of Richmond. *Appellants and other citizens similarly situated are taxpayers of Richmond and have an interest in the integrity and preservation of the Master Plan Zoning Ordinance and interested in amendments thereto being made only in accordance with law.* If the proposed shopping center or other commercial businesses are constructed on the Scott property there will result an overdevelopment and concentration of shopping centers creating traffic congestion and confusion in the area around the existing shopping center bringing about vacant and distressed retail store locations in the downtown Richmond business section damaging to property values and interests in the existing shopping center such as the properties and interests of appellants and others similarly situated. In addition, appellants would be subjected to *illegal zoning of the real estate in question. All of the above will be to the great and irreparable damage of plaintiffs and for which they have no adequate remedy at law.*

The majority opinion continues by stating "It is also alleged in the amended complaint that appellants, as taxpayers of Richmond, have an interest in the 'integrity and preservation' of the Master Plan Zoning Ordinance and in the amendments thereto being made 'in accordance with law.' Such 'interest' however, in the Master Zoning Ordinance and the amendments thereto

is not sufficient of itself, standing alone, to invoke the power of the court of equity to enjoin the operation of the amending ordinance. There must exist, or be alleged to exist, some property or civil right which allegedly will be violated by the enforcement of the ordinance or a statement of circumstances showing that a great and irreparable injury will result to the complainant by the enforcement thereof." Citing in support thereof 16 I. L. E., Injunction, §75, notes 40 and 41, page 54; *Indianapolis Market Association et al.* v. *City of Indianapolis et al.* (1934), 207 Ind. 356, 192 N. E. 754; *Males, Mayor* v. *Elbert* (1932), 203 Ind. 512, 180 N. E. 193; 28 Am. Jur., Injunctions, §190, page 694.

It is further stated therein that:

"The complainant must show that enforcement of the ordinance will affect his personal or property rights, and that it will cause him personal, direct, and irreparable injury, and not merely that he suffers in some indefinite way in common with people generally." 28 Am. Jur., Injunctions, §191, p. 696.

It is significant that equity may be called upon to provide relief in *new* and *changing circumstances.* 12 I. L. E., Equity, §3, page 269, provides:

"Absence of precedents. The absence of precedents presents no obstacle to the exercise of the jurisdiction of a court of equity, and to the award of relief in a proper case, it being the distinguishing feature of equity jurisdiction that it will apply settled rules to unusual conditions and mold its decrees so as to do equity between the parties. Such a court may well feel itself justified in applying a recognized principle under circumstances where it seems never to have been applied before."

"As stated by the Supreme Court in *Dood* v. *Reese,* 1940, 'the jurisdiction of a court of equity does not depend upon the mere accident of the court having in some previous case, at some distant time

granted relief under similar circumstances. If it were so, equity would not have grown and developed.' "

12 I. L. E., Equity, §31, page 287, states: "equity will not suffer a wrong to be without a remedy. *Equity acts specially, and will insist upon acting, at such time as will afford relief with the least inconvenience or injury to others.* And at page 288, equity regards substance rather than form. *"Equity will disregard mere forms, and will not permit a substantial right to be defeated by the interposition of merely nominal or technical distinctions."* (my emphasis).

The case of *The Columbian Athletic Club* v. *State ex rel. McMahan* (1895), 143 Ind. 98, 40 N. E. 914 established the principle that equity may intervene to enjoin the commission of a crime. That case therefore would seem to state a strong argument for injunctive relief under the facts in the instant case if, as in that case, equity will enjoin the commission of a crime it would seem reasonable to declare that equity may be importuned to enjoin the execution and enforcement of provisions of an invalid or void ordinance. It would seem the majority opinion in upholding the trial court in its ruling on the demurrer has judicially decreed the impotency of equity and further has by judicial approval decreed that the encompassing and embracing arms of equity shall be constricted. In the *Columbian Athletic Club* v. *State* case, *supra,* at page 102, there appears a pertinent and compelling statement accredited to Lord Chancellor Cottenham as follows:

"That it is the duty of the courts of equity . . . to 'adapt its practice and course of proceeding, as far as possible, to the existing state of society, and to apply its jurisdiction to all those new cases which, from the progress daily making in the affairs of men, must continually arise, and not from too strict

an adherence to forms and rules established under very different circumstances, decline to administer justice, and to enforce rights for which there is no other remedy.' "

This rule is commented upon as being worthy of one of the ablest, wisest and best judges that ever administered the chancery law of England or America. Therefore I am of the opinion that the trial court erred in sustaining the demurrer to the complaint.

As was stated at the outset of this dissent, it would seem that the principal question turns upon the invalidity of an amendment to the zoning ordinance and the persuasive issue in this case involves the meaning of certain pertinent statutory provisions.

In §53-719, Burns' 1951 Replacement, we find the following language:

"A majority of members shall constitute a quorum. No action of the commission is official, however, unless authorized by a majority of the commission ..."

It is the appellants' contention that this provision required a vote or authorization of at least six (6) of the eleven (11) member Commission.

Appellees, however, seem to argue that the provision means a "majority of a majority" or "a majority of a quorum".

The question as presented is simply this: If the Commission's action to be official requires an approval by six (6) members of the eleven (11) member Commission, then clearly the Appellate Court would not have jurisdiction to determine this cause but rather the jurisdiction would reside in the Supreme Court of Indiana pursuant to §4-214, Burns' 1946 Replacement, Clause #1 thereof.

In the view of this writer the statute means that the vote of five (5) in favor and four (4) against the amending ordinance would result in one of two alternatives, either that it was:

(1) no official action and report of the Plan Commission, in which event the Common Council of the City of Richmond had no power under the statute to adopt the amending ordinance; or

(2) that such was an adverse action and report, in which event the Common Council of the City of Richmond had no power to adopt the amending ordinance by a vote of six (6) in favor and three (3) against, such not being 75% (that is seven [7]) of the members of the Council as required by statute.

§53-765, Burns' 1951 Replacement, provides in part as follows:

"In the event the report of the Plan Commission is adverse to a proposed ordinance referred to it, the ordinance shall not be passed except by an affirmative vote of at least seventy-five (75) per centum of the members of the city council."

Thus the wording of the above quoted sections manifests a legislative intent that a majority of the members of the Commission must concur in any action in order that it be official. Contrariwise, if a majority of the members do not concur, then there can be no official action.

It may also be presumed that the Legislature was in possession of the knowledge that, absent a provision to the contrary, the common law rule is that approval of the majority of the members present, a quorum existing, is sufficient for binding official action. This is an elementary principle of the law of bodies politic. 4 McQuillin, Officers, Employees, Council Meetings, §13.27,

et seq., p. 478 (3d Ed. 1949). Therefore when the Legislature chose to employ the word "however" as a word of qualification or reservation this could only have reference to the first sentence in the section, "A majority of the members shall constitute a quorum," and thereby expressly qualified that sentence and its meaning.

"However" is defined:

"(1. In whatever manner, way, or degree: by whatever means or to whatever extent—used adversatively . . . 2: NEVERTHELESS, NOTWITHSTANDING, YET, STILL—often used to indicate a reservation after something conceded or a decision after consideration of adverse points . . ." Webster's Third New International Dictionary, Unabridged, p. 1097 (14th Ed. 1961).

It seems readily apparent that by the use of *"however"* the Legislature *declared an alternative intention.* The appellants in their brief asked the question "what is the meaning of the sentence which the word 'however' qualifies?" I agree with their statement that the idea of a quorum is that when the required number of persons are assembled as a body, the votes of a majority thereof are sufficient for a binding action. Hence it would seem that the Legislature in using the word *"however"* intended that this sentence be qualified and a reservation made, and that it could not, in such usage, intend otherwise. It cannot be reasonably inferred that the import of the §53-719, *supra,* is that a majority of a "quorum" was intended as a condition precedent to official action when the word "quorum" was not used, but instead the Legislature chose to use the word "Commission". The Commission is composed of eleven (11) members, therefore it should be logically concluded that eleven (11) members constitute the Commission.

In the purview of our Indiana statutes pertaining to zoning ordinances, amendments, modifications or changes thereto, it is indispensable that a majority of the members of a statutorily constituted full commission is necessary to constitute an official action by said Commission.

It further appears that before any action by the Common Council may be taken that all of the procedures enumerated under the statutes must be fully and strictly complied with. The general rule seems to be that legislation enabling local units of government to adopt zoning ordinances and providing for amendments and modifications thereto may only be authorized under the exercise of the police power of the State. Therefore all steps taken under said power and grant of authority must clearly conform to the terms of the grant. In other words the extent of the powers granted as well as the manner of their exercise must conform to the provisions of the statutes involved. Thus any amendment to a master plan zoning ordinance must be pursuant to, and in substantial conformity with, the enabling statute authorizing it, and all of the statutory provisions governing the conduct of the zoning commission's official action, including the number of members present and the number of members required for the adoption of a plan or any amendment thereto, must be strictly complied with. 8 McQuillin, Municipal Corporations, Zoning, §25.58 (3d Edition 1958) and 8 McQuillin, Municipal Corporations, Zoning, §25.243 (3d Edition 1958).

The clear import of §53-719, *supra*, is that while a majority of the members shall constitute a quorum, nevertheless no action of the Commission is *official unless authorized by a majority of the Commission, i. e., six (6) or more.* Thus in the instant case the record

affirmatively demonstrates, and indeed the appellees do not deny, *only five (5)* members of the Commission approved the amendment to the master plan and *four (4) disapproved.* Thereafter only six (6) members of the Common Council of the City of Richmond voted favorably thereon, whereas a majority of seventy-five per cent (75%) of the City Council would have been necessary to adopt an adverse report pursuant to §53-765, *supra*, all of which in my opinion clearly demonstrates the invalidity of the amendment to the ordinance.

In summarizing this dissent, it is my opinion that:

(1) Where as it appears from the record here, the invalidity of the amendment to the ordinance has been demonstrably shown and pleaded, this court in its affirmance of the trial court's ruling on the demurrer has erected a barricade which cannot be breached by equity to guard against the execution and enforcement of its invalid provisions. If the Appellate Court has jurisdiction of this appeal then I am of the opinion the trial court erred and should be reversed;

(2) However, since equity has been importuned to enjoin the enforcement of an invalid and void amendment to a zoning ordinance, it is my belief that the validity of the amendment is the controlling issue, therefore the Supreme Court of Indiana has jurisdiction of this appeal under §4-214, *supra*.

For all of the foregoing reasons, I am in dissent with the majority opinion.

NOTE.—Reported in 201 N. E. 2d 49.