RICHARD E. CARPENTER ET AL. *v.* WHITLEY COUNTY PLAN COMMISSION, WALTER LEHNER, WHITLEY COUNTY ZONING ADMINISTRATOR, RICHARD J. & JEAN SCHALLER, REAL ESTATE RESOURCES, INC.

[No. 3-375A46. Filed October 6, 1977.]

*William D. Swift, Robert H. Carpenter, Higgins & Swift*, of Fort Wayne, for appellants.

*James R. Fleck, Bloom, Bloom & Fleck*, of Columbia City, *John W. Whiteleather, Jr., Whiteleather & Whiteleather*, of Columbia City, for appellees.

GARRARD, J.— This is an appeal from an order of the Whitley Circuit Court affirming on writ of certiorari the approval of a subdivision plat by the Whitley County Plan Commission (Commission).

Richard J. Schaller, Jean L. Schaller and Real Estate Resources, Inc. (Applicants) filed with the Commission an application for the approval of a preliminary plat for a proposed subdivision named Cherokee Heights. On March 21, 1973, the Commission, which consisted of nine members, voted on whether to grant tentative approval to the plat. A quorum of six members was present. Four members voted against tentative approval; two in favor. The Commission director was told to inform Applicants that the plat was not approved because the proposed subdivision would conflict with the surrounding agricultural land use.

Subsequently, Applicants submitted a different plat for the same property. This proposed subdivision was called Mini-Farms Estates and contained fewer and larger lots than the prior plat. On April 18, 1973, the Commission, with six members present, voted on tentative approval of the Mini-Farms Estate plat; four voted in favor of tentative approval and two against. Carpenter, et al. (Remonstrators) filed their remonstrances against the preliminary plat. On June 20, 1973, the Commission again considered whether to grant tentative approval to the preliminary plat. Eight members were present, four voted for approval and four for disapproval. After consultation with its counsel, the Commission determined that the tie vote was without legal effect. On July 18, 1973, with eight members present, six Commission members voted to grant tentative approval to the preliminary plat and two voted to disapprove it.

Following a public hearing, the Commission voted on August 29, 1973 in favor of approval of the preliminary plat by seven votes to one. A remonstrance to the final plat of Mini-Farms Estates was filed with the Commission on December 11, 1973. On January 16, 1974, the Commission, by a seven to one vote, approved the final plat.

Remonstrators argue that the Whitley Circuit Court erred in affirming the Commission because the Commission was precluded from further consideration of the application under the doctrine enunciated in *Easley, et al. v. Metropolitan Board of Zoning Appeals of Marion Co.* (1974), 161 Ind. App. 501, 317 N.E.2d 185;

*Dellinger, et al. v. Hagest, et al.* (1973), 157 Ind. App. 158, 299 N.E.2d 222; and *Braughton, et al. v. Metropolitan Board of Zoning Appeals of Marion Co.* (1970), 146 Ind. App. 652, 257 N.E.2d 839. It is said that the Commission's votes on March 21, 1973, April 18, 1973 and June 20, 1973 were "denials" of the proposed plat within the meaning of *Braughton.* We disagree.[1]

■    *Braughton, supra,* succinctly states the rule as follows:

". . . [I]t may be said generally that a zoning board should not indiscriminately or repeatedly reconsider a determination denying a variance absent a change of conditions or circumstances. *See Whittle v. Board of Zoning Appeals* (1956), 211 Md. 36, 125 A. 2d 41; *St. Patrick's Church Corp. v. Daniels* (1931), 113 Conn. 132, 154 A. 343. If it were otherwise there would be no finality to such proceedings. *Torello v. Board of Zoning Appeals* (1940), 127 Conn. 307, 16 A. 2d 591." 146 Ind. App. 652, 658, 257 N.E.2d 839, 842.

It will be noted that the rationale of the *Braughton* doctrine arises from the quasi-judicial function served by boards of zoning appeals and plan commissions. The doctrine incorporates the policies of res judicata, i.e., that in the interest of economy, predictability, and repose of the parties, a matter which is finally determined should not be relitigated. *See, Board of Zoning Appeals of City of Valparaiso v. Sink* (1972), 153 Ind. App. 1, 285 N.E.2d 655. *Cf.* Annotation: 71 A.L.R. 2d 1362, and Note, "Indiana Variance Proceedings and the Application of Res Judicata" 46 Ind. L.J. 286.[2] However, for this rationale to preclude consideration of an application there must have been a prior and legally effective determination by a board of zoning appeals or plan commission.

---

1.    Due to our treatment of the issue, it is unnecessary to decide whether the vote on the Cherokee Heights plat should be treated as action on the Mini-Farms Estates plat.

2.    There may be an additional rationale which analogizes to the doctrine of stare decisis and seeks to prevent these agencies from being arbitrary and capricious by requiring that, absent a valid reason for departure from a prior decision, they provide the same result on the same facts. *See, Whittle v. Board of Zoning Appeals* (1956), 211 Md. 36, 125 A. 2d 41; *Torello v. Board of Zoning Appeals* (1940), 127 Conn. 307, 16 A. 2d 591; and *St. Patrick's Church Corp. v. Daniels* (1931), 113 Conn. 132, 154 A. 343, cited as authority in *Braughton.* This rationale would, similarly, require a prior and legally effective determination before it becomes operative.

■  IC 1971, 18-7-5-19 states:

"A majority of members qualified by this chapter [18-7-5-1 — 18-7-5-99] to vote, shall constitute a quorum. *No action of the commission is official, however, unless authorized by a majority of the commission* at a regular or properly called special meeting." (emphasis added)

It specifies the number of affirmative votes required for an "official" action by a plan commission. For the members of a plan commission to act under the grant of powers in IC 1971, 18-7-5-1, et seq., there must be compliance with the requirements of IC 1971, 18-7-5-19. *See, Metropolitan Board of Zoning Appeals v. Froe Corp., et al.* (1965), 137 Ind. App. 403, 209 N.E.2d 36.

IC 1971, 18-7-5-19 has not been previously construed by our courts. However, the statute was considered by Judge Hunter in a dissenting opinion in *Ratner, et al. v. City of Richmond* (1965), 136 Ind. App. 578, 201 N.E.2d 49.[3] He observed:

"Thus the wording of the above quoted sections manifests a legislative intent that a majority of the members of the Commission must concur in any action in order that it be official. Contrariwise, if a majority of the members do not concur, then there can be no official action.

It may also be presumed that the Legislature was in possession of the knowledge that, absent a provision to the contrary, the common law rule is that approval of the majority of the members present, a quorum existing, is sufficient for binding official action. This is an elementary principle of the law of bodies politic. 4 McQuillin, *Officers, Employees, Council Meetings*, § 13.27, et seq., p. 478 (3d Ed. 1949). Therefore when the Legislature chose to employ the word 'however' as a word of qualification or reservation this could only have reference to the first sentence in the section, 'A majority of the members shall constitute a quorum', and thereby expressly qualified that sentence and its meaning.

" 'However' is defined:

' 1.   In whatever manner, way, or degree: by whatever means or to whatever extent — used adversatively * * *

---

3.   The majority did not reach the issue as they held that the plaintiff in the action lacked standing to raise it. The statute then appeared as *Ind. Ann. Stat.* § 53-719, Burns 1951 Repl.

2. NEVERTHELESS, NOTWITHSTANDING, YET, STILL — often used to indicate a reservation after something conceded or a decision after consideration of adverse points * * * '

Webster's Third New International Dictionary, Unabridged, p. 1097 (14th Ed. 1961).

It seems readily apparent that by the use of '*however*' the Legislature *declared an alternative intention.* The appellants in their brief asked the question 'what is the meaning of the sentence which the word 'however' qualifies?' I agree with their statement that the idea of a quorum is that when the required number of persons are assembled as a body, the votes of a majority thereof are sufficient for a binding action. Hence it would seem that the Legislature in using the word 'however' intended that this sentence be qualified and a reservation made, and that it could not, in such usage, intend otherwise. It cannot be reasonably inferred that the import of the § 53-719, supra, is that a majority of a 'quorum' was intended as a condition precedent to official action when the word 'quorum' was not used, but instead the Legislature chose to use the word 'Commission'. The Commission is composed of eleven (11) members, therefore it should be logically concluded that eleven (11) members constitute the Commission.

In the purview of our Indiana statutes pertaining to zoning ordinances, amendments, modifications or changes thereto, it is indispensable that a majority of the members of a statutorily constituted full commission is necessary to constitute an official action by said Commission.

* * *

The clear import of § 53-719, supra, is that while a majority of the members shall constitute a quorum, nevertheless no action of the Commission is *official unless authorized by a majority of the Commission, . . .*" 136 Ind. App. 578, 591-3, 201 N.E.2d 49, 56-7.

We concur in this reasoning and adopt it as the holding of this case.

Judge Hunter, however, did not reach the specific issue before us: Where a quorum of a plan commission considers a plat application and a majority of the commission members neither approve nor disapprove, has the application been "denied" for purposes of the *Braughton* doctrine. We

hold that it has not.

As said above, for the rationale of *Braughton, et al., supra,* to be operative, there must have been a prior and legally effective determination of the same or a sufficiently similar application. Only the "official acts" of a plan commission are legally effective. There can be no "official act" without the concurrence of the majority of the members. Accordingly, where a majority has not approved or disapproved, the commission has not acted upon the application for purposes of the *Braughton* doctrine. Moreover, as pointed out by Applicants, to adopt a contrary rule would place upon persons seeking approval of a plat the risk of membership absence or abstention. Such a risk would be entirely unrelated to the merits of an application and, consequently, cannot be said to be consistent with an applicant's burden of persuasion.

Remonstrators have cited cases from other jurisdictions which have held that where a majority of the membership of a board fails to vote in favor of either granting or rejecting a proposition, the proposition is deemed denied. Cited are *Albini v. Board of Appeals* (1964), 41 Misc. 2d 783, 246 N.Y.S.2d 506; *Montogmery Co. Board of Appeals v. Walker* (1962), 228 Md. 574, 180 A. 2d 865; and *Stafford Smith v. Zoning Board of Adjustment of Madison* (1960), 59 N.J. Super. 553, 158 A. 2d 223. These cases do not consider the res adjudicata effect of such votes upon a subsequent consideration by the Board. Instead, they are concerned with whether there may be judicial review from a board unable to reach a majority concurrence because of absences or abstentions. We do not address that question in this case.

Remonstrators also cite *Steers Sand & Gravel Corp. v. Village Board of Northport* (1954), ____ Misc. ____, 129 N.Y.S. 2d 403. While its facts bring it within the foregoing cases, the opinion suggests a rationale based upon the concept that failure to approve is *not* an exercise of the board's power and consequently does not require the same number of votes as would an approval.

We mention the case because it brings into focus the precise distinction we are making. Where a majority of the board fails to

approve a petition, the *immediate* effects to the applicant may be the same whether or not a majority of the board opposed the application. However, for purposes of *claim preclusion* under the *Braughton* doctrine there is a totally different effect depending upon whether a majority voted to deny the application.

The statute requires that the vote of a majority of the entire board is necessary for an official action. Thus, where a majority of the board disapproves an application, it thereby *does act* and the opportunity for claim preclusion applies to a subsequent application.

In the case at bar, a majority of the Commission's members did not at any time vote for disapproval of either the Cherokee Heights or the Mini-Farms Estates subdivision. It necessarily follows that the *Braughton* doctrine is inapplicable to this case.

Remonstrators allege additional error in the Whitley Circuit Court's order because the Commission failed to make findings of fact with respect to the approval of the plats and because the court did make findings of fact. We have carefully reviewed Remonstrators' motion to correct errors and are unable to find these assignments, nor did remonstrators assert the Board's failure to make findings in the proceedings before the circuit court. Accordingly, the errors, if any, are waived. *Equitable Life Assurance Soc. of U.S. v. Crowe* (1976), 170 Ind. App. 677, 354 N.E.2d 772; *Vogelgesang v. Metropolitan Board of Zoning Appeals* (1973), 157 Ind. App. 300, 300 N.E.2d 101; and Indiana Rules of Procedure, Trial Rule 59(G).

Remonstrators also urge that § 205 of the Whitley Co. zoning ordinance is void for lack of certainty. That ordinance is quoted in Remonstrators' brief as providing in part:

> "The district designated for agricultural use, A-1, is intended to preserve and protect agricultural land from undesirable urban growth while permitting limited residential development on large-size lots which provide adequate space for private water and sewerage facilities. . . ."

Remonstrators refer us to pages 645 to 692 of the record, implying that the text of the ordinance may be found there. It is not.

What we find instead are the Administrative Recommendations of the Comprehensive Development Plan for Whitley County. Indeed, we have searched the entire record and have been unable to locate the text of the zoning ordinance.[4]

Remonstrators argue that the ordinance fails to specify the size and character of residential development in the form of "large size lots" which is permitted in an A-1 zone under § 205. Oblique reference is made to § 211 of the same ordinance which apparently specifies the minimum size of such lots. The text of that section is not of record. For all we know there may be other sections of the ordinance which provide additional specificity to § 205.

The Indiana Supreme Court has observed:

"Meeting the question presented, it may be stated as a general rule that one of the requisites of a valid ordinance requires that it be precise, definite, and certain in expression. However, it is well settled that courts will not, by construction, defeat the purposes and objects intended by an ordinance, if it is sufficiently definite to be understood with reasonable certainty." *Fred Geiger & Sons v. Schmitt* (1917), 186 Ind. 292, 294, 116 N.E. 50, 51.

Further, ordinances should be construed so as to find their validity where possible. *Smith, et al. v. City of New Albany* (1910), 175 Ind. 279, 93 N.E. 73. The rule is well settled in Indiana that the rules of statutory construction are to be applied in construing an ordinance. *In re Woerner, etc. v. City of Indianapolis* (1961), 242 Ind. 253, 260, 177 N.E.2d 34, 37. A cardinal rule of statutory construction is stated in *Indiana State Highway Comm. v. White* (1973), 259 Ind. 690, 695, 291 N.E.2d 550, 553:

"And as always, when we are called upon to construe words and phrases in a single section of a statute, we must construe

---

4. Section 205 of the ordinance is quoted at pages 195 and 723 of the record. Short portions of other sections are quoted at other pages. A summary of Section 211 of the ordinance is found at page 724. So far as we can determine from the record, the Whitley County zoning ordinance was never introduced into evidence before the Whitley Circuit Court. Nor is it clear from the record presented how the interplay between the zoning ordinance and the subdivision control ordinance under which the plat was approved, is effected.

them together with the other parts of the same section and with the statute as a whole."

As indicated by Remonstrators' reference to § 211 of the zoning ordinance, we cannot construe § 205 without the assistance of other relevant portions of the ordinance. This court cannot take judicial notice of ordinances. *In the Matter of Public Law No. 305 and Public Law No. 309 of the Indiana Acts of 1975* (1975), 263 Ind. 506, 334 N.E.2d 659. Remonstrators have failed to provide a sufficient record to permit review of this issue. It follows that we must affirm the Whitley Circuit Court's finding that the Commission did not proceed illegally under § 205. *McClurg, et al. v. Carte, Inc., et al.* (1970), 255 Ind. 110, 262 N.E.2d 854; *Indianapolis Traction and Terminal Co. v. Hensley* (1917), 186 Ind. 479, 115 N.E. 934; *Green v. City of Indianapolis* (1864), 22 Ind. 192; *Melton v. Area Plan Commission of Evansville and Vanderburgh County* (1974), 160 Ind. App. 476, 312 N.E.2d 501.

Finally, Remonstrators argue that the Commission's approval of the plat was contrary to the evidence. Their sole assertion in this regard is that because the surrounding landowners testified that they opposed the subdivision, a fortiori, the proposed plat was "undesirable urban growth" under § 205 of the zoning ordinance. We disagree. The issue to be decided *by the Commission* was whether the proposed plat was in accordance with the Master Plan, the zoning ordinance, and the requirements of IC 1971, 18-7-5-49. The feelings of the surrounding landowners, while relevant, are not determinative of this issue. *Town of Homecroft, et al. v. Macbeth* (1958), 238 Ind. 57, 148 N.E.2d 563.

The Whitley Circuit Court is affirmed.

Hoffman, J. concurs; Staton, P.J. dissents and files separate opinion.

## DISSENTING OPINION

STATON, P.J.—I dissent from the majority opinion since it has misinterpreted IC 1971, 18-7-5-19 which clearly provides for a quorum to transact the business of the Commission "at a regular

or properly called special meeting. . . ." Therefore, *Braughton v. Metropolitan Board of Zoning Appeals* (1970), 146 Ind. App. 652, 257 N.E.2d 839[1] would apply, since a "prior and legally effective determination . . ." has been made by the Commission. I would reverse the trial court's judgment.

The statute, IC 1971, 18-7-5-19, provides:

"QUORUM — Number required for official action. — A majority of members qualified by this chapter (18-7-5-1 — 18-7-5-99) to vote, shall constitute a quorum. No action of the commission is official, however, unless authorized by a majority of the commission at a regular or properly called special meeting."

The majority opinion has interpreted the statute to mean that no official, binding action can be taken by the commission unless there is at least a majority of the commission voting or six of the eleven members voting in favor of a proposal. This interpretation ignores the use of the word "quorum" and its meaning. The statute should be interpreted in the proper context of the language used and in accordance with the obvious intent of the legislature. The statute should be interpreted to mean that a majority of the commission shall constitute a quorum; however, no action of the quorum is official unless it takes place at a regular or properly called special meeting. Otherwise, there would be no purpose of defining what constituted a quorum or for the statute.

A "quorum" means the number of members who are legally competent to transact business in the absence of other members. *Slush v. Patterson* (1947), 201 Miss. 113, 29 So.2d 311. It implies a regular or properly called special meeting of the members. *Application of McGovern* (1943), 291 N.Y. 104, 51 N.E.2d 666. In *State ex rel. Green v. Edmondson* (1912), 12 Ohio N.P. (n.s.) 577, 23 Ohio Dec. 85, the court explained the function of a quorum:

"[A] quorum consists of a majority of its members, and that such quorum, due notice having been given of the time and

---

1. *Braughton* was overruled in part by *Easley v. Metropolitan Bd. of Zon. App. of Marion Cty.* (1974), 161 Ind. App. 501, 317 N.E.2d 185. Specifically, *Easley* overturned *Braughton's* holding that remonstrators raising the defense of res judicata in variance hearings bear the burden of proof to establish that conditions are unchanged since the time of a prior variance denial.

place of meeting to all members, can exercise the powers of the commission; and further, that a majority of such quorum is the action of the body or commission."

This same general rule was applied in *Davidson v. State* (1966), 248 Ind. 46, 221 N.E.2d 814 when only three of the five members of the Indiana Supreme Court participated in an opinion. One of the three members, Judge Jackson, dissented; the other two members, Judges Arterburn and Myers, concurred. Chief Justice Arterburn wrote:

"It is to be noted that a majority of the Judges of the Court, which would be three in the present instance, may constitute a quorum. A quorum is defined as the number of persons that are members of a body when assembled who are legally competent to transact the business of such a body. Normally, without the constitutional provision, a majority is considered a quorum at common law. The Constitution could have fixed a different number, but did not. Three members of this Court, under the Constitution as well as at common law, constitute a quorum to do business. This Court, when so constituted, may render a 2-1 decision."

The ambiguity here arises from the use of the word "commission" instead of the word "quorum" in the second sentence of the statute. If "quorum" is substituted for "commission," the statute immediately becomes clear and meaningful. This meaning was the intent of the legislature. If this substitution, "quorum" for "commission," is not made, the statute is ambiguous and meaningless. Without the substitution, the Indiana Legislature appears to have done a useless, meaningless act. *State ex rel. Bynum v. LaPorte Superior Court No. 1* (1973), 259 Ind. 647, 291 N.E.2d 355. *Cordial v. Grimm* (1976), 169 Ind. App. 58, 346 N.E.2d 266.

A quorum of six Commission members voted on March 21, 1973. Four members voted against the proposed subdivision and two members voted in favor of the proposed subdivision. This was a "legally effective determination" by the Commission. *Braughton, supra,* does apply. I would reverse the trial court's

judgment with instructions to enter judgment for Richard E. Carpenter.

NOTE—Reported at 367 N.E.2d 1156.