JOHNSON COUNTY PLAN COMMISSION, JOHNSON COUNTY BOARD OF ZONING APPEALS, AND JOHN L. RHOADES, JAMES L. MARTIN, PAUL WOCHERFENG, FLOYD VANLANINGHAM, AND WILLIAM EASTBURN, AS INDIVIDUAL MEMBERS OF SAID BOARD, JOHNSON COUNTY BUILDING COMMISSIONER, BILL DRAKE, JOHN DEVORE, AND JAMES BILLINGSLEY v. FAYETTE BUILDING CORPORATION.

[No. 1-672A21. Filed June 28, 1973. Rehearing denied July 30, 1973.] Transfer denied December 10, 1973.]

*Roy L. Dickinson*, Esquire, *James B. Young*, Esquire, *Young & Vandivier*, of Franklin, for appellants.

*William F. LeMond*, Esquire, of Indianapolis, *H. Harold Soshnick*, Esquire, *Soshnick & Bates*, of Shelbyville, for appellee.

LYBROOK, J.—Fayette applied for a special exception to permit the construction of an 845 unit mobile home park. This was denied by the Johnson County Board of Zoning Appeals (Board).

Fayette filed a petition for writ of certiorari and after further proceedings the Circuit Court reversed the decision of the Board, authorizing construction of the park. This appeal follows.

Fayette is the contract purchaser of certain real property in Clark Township, Johnson County, Indiana. Clark Township is zoned primarily for agricultural uses, and development of property as a mobile home park is contemplated within the Master Plan as a "Special Exception."

At the April 15, 1971 meeting, the Johnson County Plan Commission went on record as opposing the development and sent their recommendation to the Board of Zoning Appeals.

On June 3, 1971, after hearing evidence, the Board denied the application, making the following findings:

"1.   That there has not been sufficient evidence shown that the condition of the land is suitable for a mobile home park.

2. That the roadway network is presently insufficient and, evidence has not been presented that it can be widened to sufficiently carry the added traffic of the proposed mobile home park; and specifically, the evidence shows that the roadway width on the roads which will serve the land under consideration for a special exception are between eighteen (18) and twenty (20) feet in width, with possible future widening potential to a width of twenty-two (22) feet.

3. That insufficient evidence has been presented, and that there is a conflict in the evidence that was presented, as to the drainage of the proposed land under consideration and the drainage impact upon the existing Griffith Ditch and to the other ditches which service the area.

4. That evidence was presented and unrefuted by the petitioner that the Clark Pleasant School taxing district faced serious problems as to school tax revenue, school indebtedness and the abailability [sic] of tax monies for school construction, school bus transportation, teachers' and employees' wages, etc. James L. Martin seconded the motion and roll call of votes showed Floyd Vanlaningham, William Eastburn, Paul Wocherfeng, James L. Martin and John L. Rhoades all voting to deny the petition. Motion denied 5-0."

Fayette then timely filed its petition for writ of certiorari, alleging, *inter alia*, that Fayette had introduced substantial evidence to the Board that the special exception requested was consistent with the spirit, purpose, and intent of the ordinance, would not substantially and permanently injure the appropriate use of neighboring property, and would serve the public convenience and welfare; that evidence presented before the Board in opposition to the application was of no legal significance in consideration of the total evidence presented; that the Commission and Board have, under the Master Plan, practiced systematic exclusion of mobile home parks; and that the decision of the Board is contrary to law and fact.

Following a hearing on the petition for writ of certiorari, the trial court reversed the decision of the Board and entered its Special Findings of Fact, Conclusions of Law, Judgment and Decree, ruling, *inter alia:*

"8. The Court further finds that substantial evidence, unrefuted, was presented to the Board that all requirements of such special exception had been or will be met.

9. The Court further finds that no evidence was introduced to indicate that the special exception would 'substantially and permanently injure the appropriate use of neighboring property.'

10. The Court further finds that said special exception is consistent with the spirit, purpose and intent of the Master Plan and will serve the public convenience and welfare.

11. The Court further finds that there has been no systematic exclusion of a type of development essential to low and moderate income families on the part of the Johnson County Board of Zoning Appeals.

12. The Court further finds that no evidence was presented to the Board to justify the refusal of an Improvement Location Permit, and that the evidence presented to the Board by the Petitioner substantially complied with all requirements for the special exception as set forth in the ordinance.

13. The Court, therefore, concludes as a matter of law on the above finding of facts, that the law is with the Petitioner, Fayette Building Corporation, and against the Respondents.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the finding and decesion [sic] of the Johnson County Board of Zoning Appeals, appealed from herein, is illegal and is hereby reversed."

Commission timely filed its Motion to Correct Errors, alleging that the court's above findings 8, 9, 10 and 12 are contrary to law and contrary to evidence. Commission appeals, presenting as the sole issue for review whether the trial court erred in overruling its Motion to Correct Errors.

In its brief Fayette presents the following cross-assignment of errors:

"1. Whether the Johnson County Plan Commission and Johnson County Board of Zoning Appeals through its Master Plan Zoning Ordinance and the administration thereof has systematically engaged in exclusionary zoning practices to prevent housing opportunities for low and moderate income citizens in contravention of Federal and State Constitutions; and,

2. Whether the Johnson County Plan Commission and Johnson County Board of Zoning Appeals in the practical

administration of its zoning ordinances has systematically engaged in exclusionary zoning practices to prevent housing opportunities for low and moderate income citizens in violation of the Civil Rights Act of 1964 and the Fair Housing Act of 1968; and,

3. Whether the Johnson County Master Plan Zoning Ordinance in its application to Appellee's property is in violation of the Indiana Constitution as having no reasonable relationship to the exercise of the police power of the State in the interests of the public health, safety and general welfare of its citizens."

Decisions of Boards of Zoning Appeals are subject to review by certiorari. The procedure is set out at IC 1971, 18-7-5-87; Ind. Ann. Stat. § 53-783 (Burns 1964).

"Any person or persons, firm or corporation jointly or severally aggrieved by any decision of the board of zoning appeals, may present to the circuit or superior court of the county in which the premises affected is located a petition duly verified, *setting forth that such decision is illegal in whole or in part, and specifying the grounds of the illegality.* (Our emphasis.)

This statute has been construed as limiting the trial court's scope of review to a determination of the legality of the decision. See, *Board of Zoning Appeals* v. *American Fletcher National Bank* (1965), 139 Ind. App. 9, 205 N.E.2d 322; *Fryer* v. *City of New Albany* (1963), 135 Ind. App. 454, 194 N.E.2d 417; and *Board of Zoning Appeals* v. *School City of Mishawaka* (1957), 127 Ind. App. 683, 145 N.E.2d 302.

In reviewing a Board's decision, the trial court may not substitute its own discretion for that of the Board. *Speedway Board of Zoning Appeals* v. *Standard Concrete Materials, Inc.* (1971), 150 Ind. App. 363, 276 N.E.2d 589; *Metropolitan Board of Zoning Appeals* v. *Standard Life Insurance Company* (1969), 145 Ind. App. 363, 251 N.E.2d 60; *Board of Zoning Appeals* v. *American Fletcher National Bank, supra; Kessler et al.* v. *Marion County Board of Zoning Appeals* (1965), 137 Ind. App. 610, 209 N.E.2d 43;

*Nelson* v. *The Board of Zoning Appeals, etc.* (1959), 240 Ind. 212, 162 N.E.2d 449; *Board of Zoning Appeals* v. *School City of Mishawaka, supra.*

Also, the scope of judicial review is limited even more when the decision of a Board of Zoning Appeals is negative, rather than positive. *Speedway Board of Zoning Appeals* v. *Standard Concrete Materials, Inc., supra.*

Board correctly cites the following from *Board of Zoning Appeals* v. *School City of Mishawaka, supra:*

> "As a general rule the court will not reverse the decision of the Board of Zoning Appeals where there is evidence to support it nor will the court substitute its own judgment for that of the board. *City of South Bend* v. *Marckle* (1939), 215 Ind. 74, 18 N.E.2d 764. Nevertheless, 'if it should be made to appear that the evidence upon which the agency acted was devoid of probative value; that the *quantum* of legitimate evidence was so proportionately meager as to lead to the conviction that the finding does not rest on a rational basis or that the result of the hearing must have been substantially influenced by improper considerations the order will be set aside.' *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N.E.2d 399. Also 'in final analysis, the finding of an administrative agency will not be disturbed when subjected to the scrutiny of judicial review upon the claim that it is not supported by the evidence, unless it is made to appear that the finding does not rest upon a substantially factual foundation.' *Keeling* v. *Board of Zoning Appeals, supra.*"

The trial court found (No. 9 above) that no evidence was introduced to indicate that the exception would "substantially and permanently injure the appropriate use of neighboring property." Board contends this finding exceeded the limits of judicial review, citing the following testimony of remonstrators John DeVore and James Billingsley.

DeVore:

> "Q. What effect would the construction of some 800 mobile homes with their pads on the site have, in your opinion, on the ditch?
> A. By visual sighting of the last three years with this north portion cleaned out and the southern portion

of the ditch the way it is now with crooked channels and sandbars and growth, and such matter, we have had serious flooding in the last two or three years, more than normal, and we feel like this will just add to the situation that is already bad."

Billingsley:

"Q. Have you had occasion to be on the property that is the subject of this controversy?

A. Yes, I have lived there for 50 years.

Q. You've seen it in flood and in famine, right?

A. Yes sir.

Q. Can you tell us something about its characteristics when there's high water and rain?

A. Well, when there is high water, water usually stands in it, I'd say probably the northern two-thirds. When we have a big rain, it runs across Road 375 in about three different places, but it is wet following a big rain.

Q. Do you have any knowledge about the present tiling of it?

A. Well, I don't know what's on there, but it's insufficient, I do know that, because I was planting corn last year when the man that farmed it was trying to plow, and he got hung up in the middle of the field.

Q. Has it always been that way—water?

A. Yes."

Since the above testimony supported the Board's action, we hold that the trial court exceeded the limits of judicial review in reversing the Board's decision. Therefore, the judgment of the trial court must be reversed and the decision of the Board reinstated.

Fayette's cross-assignment of errors attacks the trial court's finding (No. 11) that there has been no systematic exclusion of a type of development essential to low and moderate income families by the Board.

The burden of proving this serious charge rested upon Fayette and it failed to sustain its burden. The record shows that during the four year period prior to the filing of this

action, a total of 1037 new mobile pads were approved. As of October 8, 1971, there was a total of 431 new pads under construction in Johnson County, and over 250 completed pads vacant. The trial court could legitimately have drawn an inference that the Board was permitting construction of sufficient mobile home pads to meet the demand.

Since there was evidence of probative value to sustain the trial court's finding No. 11, we cannot substitute our judgment therefor, and Fayette's assignment of cross-errors must fail.

The judgment of the trial court is affirmed as to finding No. 11, reversed as to the finding that the Board's decision was illegal, and the decision of the Board is affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 297 N.E.2d 899.