Donald BURRELL and Alice Burrell,
Appellants–Plaintiffs,

v.

LAKE COUNTY PLAN COMMISSION,
Thomas K. Parry, M.B. Kuknyo, Jason
L. Horn, Frederick N. Fedorchak, M.D.,
Jerry Aliee, G.W. Molenar, Joseph E.
Yahner, Donna Gruszcyk and Rowland
A. Fabian, Appellees–Defendants.

No. 45A05–9209–CV–339.

Court of Appeals of Indiana,
Fifth District.

Dec. 7, 1993.

Transfer Denied March 8, 1994.

Fred M. Cuppy, Burke Murphy Costanza & Cuppy, Merrillville, for appellants–plaintiffs.

Thomas K. Parry, Crown Point, for appellees-defendants.

SHARPNACK, Chief Judge.

This case concerns the denial of approval by the Lake County Plan Commission (Commission) to the preliminary subdivision plan submitted by Donald and Alice Burrell. The Burrells petitioned the trial court for a writ of certiorari to reverse the denial of plan approval and the trial court, after remanding for findings of fact by the Commission, denied relief and affirmed the Commission action. The Burrells now ask us to reverse the trial court and the Commission. We affirm.

The Burrells present three issues for our review, which we renumber and rephrase as:

1. Whether the ordinance provision requiring denial of preliminary plan approval "where a proposed subdivision would adversely affect the health, safety, and general welfare of the County" is a permissible standard;

2. whether the Commission's findings are supported by substantial evidence; and

3. whether the Commission was estopped to deny preliminary plan approval on the basis of adverse effect to the "health, safety, and general welfare" of the community because the Burrells already had received tentative plan approval under that same standard.

In 1990, the Burrells filed an application with the Commission for subdivision approval of Rainbow Estates, a residential subdivision to be developed on their property in Lake County, Indiana. The Commis-

sion granted tentative approval for the subdivision. After various deferrals and revisions of the subject development plans, a public hearing on the Burrells' application for preliminary plan approval was held during the Commission's regular meeting of February 5, 1991. The Burrells' application was denied, consistent with the requirements of the applicable ordinance, based on the Commission's conclusion that the subdivision would have an adverse effect on the health, safety, and general welfare of the community. The Commission made no findings of fact in support of its conclusion.

The Burrells filed a verified petition for writ of certiorari challenging the Commission's determination. The trial court held that the standard applied by the Commission was legally sufficient and remanded the case to the Commission for entry of findings of fact in support of its determination. Pursuant to the court's order, the Commission issued its findings of fact and submitted the findings to the trial court. The Burrells then filed a motion to reverse the denial of their request for preliminary plan approval. The trial court denied the motion, and the Burrells appeal from this adverse ruling.

■ The first issue raised by the Burrells is whether the ordinance provision upon which the Commission based its denial of preliminary plan approval is a permissible standard. The Burrells contend that the section of the Lake County Subdivision Ordinance Regulations (the Ordinance) directing the Commission to deny preliminary plan approval if "the proposal does not comply with the requirements of this Ordinance or other ordinances of Lake County, *or where a proposed subdivision would adversely affect the health, safety, or general welfare of the County*," [Ordinance § IV(B) (Record, p. 409(a) (emphasis added))], is so vague and uncertain as to be unconstitutional and that it represents an illegal delegation of legislative authority because it purports to give the Commission unlimited discretion.[1]

---

**1.** The Burrells also assert in their argument on this issue that the Commission was required to

■ Although it is true that in order to be valid an ordinance must be "precise, definite, and certain in expression," it is equally true that the courts of this state will not construe an ordinance so as to defeat its purposes "if it is sufficiently definite to be understood with reasonable certainty." *Carpenter v. Whitley County Plan Commission* (1977), 174 Ind.App. 412, 419, 367 N.E.2d 1156, 1161 (quoting *Fred Geiger & Sons v. Schmitt* (1917), 186 Ind. 292, 294, 116 N.E. 50, 51). It is well settled that we are to apply the rules of statutory construction when construing an ordinance. *Id.* Accordingly, when construing the words and phrases in a particular section, we construe them together with the other words and phrases in that section, as well as with the statute as a whole. *Id.* Ordinances should be interpreted so as to uphold their validity whenever possible. *Id.*

The Burrells correctly note that there are established limitations on the discretionary power of local planning commissions:

"Cities and towns have been granted broad authority by the state ... to control the development of areas in and adjacent to them. However, public policy requires that this authority be exercised in a standardized and clearly defined manner.... [A]lthough public policy requires municipal control of such development, nevertheless the authority of a town to deny a landowner the right to develop his property by refusing to approve the plat of such development is by statute made to rest upon specific standards of a statute or implementing ordinance. Thereafter the approval or disapproval of the plat on the basis of the controlling standards is a ministerial act."

*Knutson v. State ex rel. Seberger* (1959), 239 Ind. 656, 659, 157 N.E.2d 469, 471 (footnotes omitted), *reh'g denied*, 239 Ind. 656, 160 N.E.2d 200. The Burrells argue that the "health, safety, and general welfare" standard does not meet this certainty requirement.[2]

In support of their position, the Burrells cite several cases standing for the proposition that once a petitioner has established compliance with the specific standards of the statute or implementing ordinance, approval of a plat is a ministerial act—a plan commission has no discretion to approve some plats and disapprove others.[3] These

grant them preliminary plan approval because they complied with all of the concrete standards in the Ordinance, as evidenced by the Commission staff findings. We note, however, that a plan commission is not required to follow the staff findings and recommendations in all cases. A plan commission may deny approval under appropriate circumstances notwithstanding compliance with technical plan requirements. *See Dellinger v. Hagest* (1973), 157 Ind.App. 158, 165-6, 299 N.E.2d 222, 226 (plan commission's findings that development would be tantamount to spot zoning, that it would be difficult to provide necessary services, and that available access road was insufficient, were sufficient grounds for denying approval of subdivision plat notwithstanding compliance with technical plat requirements; thus, res judicata barred subsequent approval absent change in conditions with respect to those findings).

2. The appellees, the Commission and remonstrator Fedorchak, cite to *Whitesell v. Kosciusko County Board of Zoning Appeals* (1990), Ind. App., 558 N.E.2d 889, to counter the Burrells' argument. In that case, the following standard was upheld as being sufficiently specific and concrete within the context of planned unit development review: "'properties adjacent to the unit plan shall not be adversely affected.'" *Id.*

at 891. Although *Whitesell* lends some support to the appellees' position, the standard upheld in that case is sufficiently distinguishable from the language at issue here that we choose not to rely on *Whitesell*.

3. The Burrells cite, inter alia: *Knutson, supra* (where plat of subdivision complied with all specific requirements of statute, and city ordinance had been declared void, it became the mandatory duty of the town board to approve and accept the plat as submitted); *Johnson County Plan Commission v. RamsHead Corp.* (1984), Ind.App., 463 N.E.2d 295 (where applicant's plat conforms to the concrete standards set forth in the county ordinance, approval is ministerial function in which plan commission has no discretion); *Dosmann v. Area Plan Commission of St. Joseph County* (1974), 160 Ind. App. 605, 312 N.E.2d 880 (plan commission exceeded authority when it denied application for proposed subdivision plat where its disapproval was based on consideration of standards extrinsic to the subdivision ordinance); *Suburban Homes Corp. v. Anderson* (1970), 147 Ind.App. 419, 261 N.E.2d 376 (plan commission had no discretion to impose condition precedent to plat approval that sidewalks be installed in proposed subdivision where sidewalks clearly were not required under the applicable ordinance).

cases, however, do not resolve the present issue. In this case, the Ordinance specifically requires the Commission to reject the application for preliminary plan approval when the proposal is not in compliance with the applicable ordinances or where the proposed subdivision would have an adverse effect on health, safety, or general welfare. Most importantly, this health, safety, and general welfare language does not stand alone. Another section of the Ordinance instructs the Commission and property owners alike on the sorts of adverse effects that would properly serve as a basis for denial:

"1. *Suitability of Land.* No land shall be subdivided which is unsuitable for subdivision by reason of flooding, collection of ground water, bad drainage, adverse earth or rock formation or topography, or any feature likely to be harmful to the health, safety, or welfare of the future residents of the subdivision or of the community. Such lands shall not be considered for subdivision until such time as the conditions causing the unsuitability are corrected."

Ordinance § V(B)(1) (Record, p. 413). Accordingly, we believe that the Ordinance provides ample notice to landowners of those conditions that will be evaluated by the Commission. Although the Commission did not cite § V(B)(1) specifically in its findings, its rejection of the Burrells' plan was clearly based on conditions listed in that section: flooding, bad drainage, and risks of leaching and biological contamination due to the presence of adverse soils, *i.e.,* adverse "earth."

The Burrells argue that this court's holding in *Tippecanoe County Area Plan Commission v. Sheffield Developers, Inc.* (1979), 181 Ind.App. 586, 394 N.E.2d 176, *trans. denied,* requires that we declare the Ordinance constitutionally infirm for lack of specific and concrete standards. In *Sheffield Developers,* at issue was whether a section in a county subdivision control ordinance contained sufficiently specific and concrete standards so as to give fair warning as to what the local plan commission would consider when reviewing a preliminary plat. The section at issue was so vague that the court wrote "we are completely unable to glean from § 1.1 any specific or concrete standards by which a proposed plat may be judged." 181 Ind.App. at 602, 394 N.E.2d at 186.[4] Unlike the provision at issue in *Sheffield Developers,* however, the Ordinance in this case does provide notice of the factors the Commission will consider when reviewing an application for preliminary subdivision plan approval.[5]

---

**4.** The section at issue in *Sheffield Developers* provided:

" 'This ordinance is enacted for the purpose of adopting subdivision regulations for Lafayette, West Lafayette, and Tippecanoe County, Indiana.

The regulation of land subdivision has become widely recognized as a method of insuring sound community growth and the safeguarding of the interests of the home owner, the subdivider, and the local government. The citizens of Tippecanoe County need the assurance that residential subdivisions will provide permanent assets to their community. This ordinance should be viewed, not as an end in itself, but as one tool or technique for the shaping of urban land according to a comprehensive plan for the development of Tippecanoe County as a whole.

The planning of subdivision is the joint responsibility of the subdivider and the Tippecanoe County Area Plan Commission (hereinafter called "The Commission"), the former having the prime responsibility for the creation of desirable, stable neighborhoods that be-

come an integral part of the entire county. Subdivision design and utility can enhance or depreciate the character and potentialities of the surrounding areas and stabilize or endanger the individual's investment in a home.

The Commission has the responsibility of helping the subdivider achieve a high standard of excellence in the planning of his subdivision, and of informing all subdividers of the minimum standards and requirements for subdivision development within Tippecanoe County.' "

*Sheffield Developers,* 181 Ind.App. at 601–2, 394 N.E.2d at 186 (quoting Tippecanoe County Subdivision Control Ordinance § 1.1).

**5.** For the same reason, we distinguish another case cited by the Burrells, *Goodman v. Board of Commissioners of the Township of South Whitehall* (1980), 49 Pa.Cmwlth. 35, 411 A.2d 838, in which the court held that a provision requiring that a subdivision be "coordinated" with surrounding areas so that the area may be developed "harmoniously" was so vague and nebu-

In *Busse v. City of Madison* (1993), 177 Wis.2d 808, 503 N.W.2d 340, *review denied*, the Court of Appeals of Wisconsin was called upon to determine if a section in a local subdivision ordinance was impermissibly vague. The section before the court in that case was very similar to § V(B)(1). It provided:

" 'No land shall be subdivided which is ... unsuitable for use by reason of flooding, bad drainage, soil or rock formations with severe limitations for development, severe erosion potential, or unfavorable topography, or any other feature likely to be harmful to health, safety or welfare of future residents or landowners in the proposed subdivision or of the community.' "

*Busse*, 503 N.W.2d at 342 (quoting Madison, Wisconsin General Ordinance § 16.-23(3)(a)3). The court held that the language was sufficiently specific, and that denial of a subdivider's revised preliminary plat under that section was not arbitrary, unreasonable, or discriminatory. *Id.* at 344. We reach the same conclusion. The rule set forth in *Sheffield Developers* is that "[a] standard must be written with sufficient precision to give fair warning as to what the Commission will consider in making its decision." *Sheffield Developers*, 394 N.E.2d at 185. We believe that

this requirement is satisfied in this case, and hold that the Ordinance provides adequate notice of the conditions which, if found to exist, will preclude approval of a preliminary subdivision plan. *Busse*, 503 N.W.2d at 344; *but compare Harrisburg Fore Associates v. Board of Supervisors of Lower Paxton Township* (1975), 21 Pa. Cmwlth. 137, 344 A.2d 277 (provision that land subject to "hazards to life, health or property shall not be subdivided for residential purposes until such hazards have been eliminated or unless adequate safeguards against such hazards are provided" held to be insufficient standard by which to deny proposed subdivision).

 The Burrells also assert in their argument on this issue that the standard under which their application for preliminary plan approval was denied is invalid because it represents an improper delegation of legislative authority. The parties have not cited, nor have we found, a reported case from this state challenging the validity of a subdivision ordinance provision of the sort at issue here.[6] At the outset of our discussion on this issue, we note that, if possible, we must construe the ordinance before us to give meaning and effect to each of its provisions, and to uphold its validity. *See generally, Public Storage,*

---

lous that it was an insufficient basis on which to deny preliminary subdivision plan approval. 411 A.2d at 841.

**6.** The appellees cite to *Town of Merrillville Board of Zoning Appeals v. Public Storage* (1991), Ind.App., 568 N.E.2d 1092, *trans. denied,* which involved a municipal code setting forth the prerequisites for granting a special exception under the zoning ordinance. The provision required, among other things, that "[t]he establishment, maintenance, or operation of the special use will not be detrimental to or endanger the public health, safety, morals, comfort or general welfare...." *Id.* at 1094–1095. This court affirmed the trial court's ruling that the local board's determination that the proposed use would be better suited to an industrial area was an abuse of discretion where the board "did not comment on the facility's effect on the community's health, welfare, morals, or safety ... [and] no assertion was ever made that the storage facility would have an adverse effect on the community's health, welfare, morals, and safety." *Id.* at 1095. Appellees argue that *Public*

*Storage* represents implied approval of the inclusion of a health, safety, and general welfare standard in a local ordinance. It does not appear from the opinion in *Public Storage*, however, that the validity of the subject provision was ever in issue.

Similarly, the Burrells cite to *Antrim v. Hohlt* (1952), 122 Ind.App. 681, 108 N.E.2d 197, but that case does not resolve the issue before us. *Antrim* involved a board of zoning appeals that granted a variance from the applicable zoning ordinance for a use that was substantially different than the uses allowed in the district. The court ruled that the use would so change the character of the area that the variance was improper and that an amendment to the ordinance was necessary to allow the use. 122 Ind.App. at 689, 108 N.E.2d at 199. The court wrote that "[t]o permit Boards of Zoning Appeals to change substantially the master zoning plans in use districts created by a zoning ordinance would constitute an improper delegation of powers of the legislative body of the municipality...." 122 Ind.App. at 690, 108 N.E.2d at 200.

568 N.E.2d at 1098; *Simon v. Auburn Board of Zoning Appeals* (1988), Ind.App., 519 N.E.2d 205, 211; *Carpenter,* 174 Ind. App. at 419, 367 N.E.2d at 1161.

■ It is well settled that discretion in the formulation of standards is to be exercised when an ordinance is created, rather than when an ordinance is applied. *Yater v. Hancock County Planning Commission* (1993), Ind.App., 614 N.E.2d 568, 572, *reh'g denied, trans. denied.* "[D]iscretion only serves to render unpredictable and possibly inequitable decisions if exercised too greatly when a plat proposal is submitted." *Id.* (citing *Suburban Homes Corp. v. Anderson* (1970), 147 Ind.App. 419, 261 N.E.2d 376, 377). Accordingly, we agree with the Burrells that the Commission may not exercise the sort of discretion reserved to a legislative body enacting a law or ordinance to protect the health, safety, and general welfare of the community, and that any attempt to delegate such broad authority would be improper. The question before us, then, is whether the health, safety, and general welfare language in the Ordinance improperly attempts to imbue the Commission with legislative discretion or, instead, directs the Commission to deny preliminary approval based on adverse effect to health, safety, and general welfare upon a determination that specified conditions exist. We believe the latter interpretation is the better view.

■ Within the area of administrative law generally, the courts of this state have held that although a legislative body may not delegate the power to make a law, it may delegate to an administrative body the power to determine facts upon which the law's action depends. *State ex rel. Standard Oil Company v. Review Board of Indiana Employment Security Division* (1951), 230 Ind. 1, 101 N.E.2d 60; *Financial Aid Corp. v. Wallace* (1939), 216

Ind. 114, 23 N.E.2d 472. In other words, "a legislative body may enact a law, the operation of which depends upon the existence of a stipulated condition, and ... it may delegate to a ministerial agency power to determine whether the condition exists." *Campbell v. Heiss* (1944), 222 Ind. 297, 302, 53 N.E.2d 634, 636. A planning commission's review of a subdivision plan to determine if the plan is in compliance with the applicable statutes and ordinances is a form of exercising delegated authority to make factual determinations within the guidelines established by a legislative body.

We reiterate that the Ordinance involved here does not give the Commission unguided discretion to determine what conditions are adverse to the health, safety, and general welfare of the community. Instead, § V(B)(1) of the Ordinance, reproduced *supra,* provides that property subject to specified adverse conditions may not be subdivided. The function of reviewing evidence in connection with an application for preliminary plan approval for the purpose of determining whether those adverse conditions exist does not constitute an improper delegation of legislative authority to the Commission. We view the Ordinance in this case as merely directing the Commission to make a factual determination on whether specific conditions exist that render property unsuitable for subdivision (*e.g.,* flooding, bad drainage, adverse topography) and to deny subdivision plan approval based on health, safety, and general welfare where those conditions are found to exist. Accordingly, we find that the health, safety, and general welfare standard of which the Burrells complain does not represent an improper delegation of legislative authority because the Ordinance provides guidelines regarding those characteristics considered adverse to the community.[7] *Cf., City of Hammond v. Red Top*

7. Our holding is consistent with the reasoning in three of the opinions from other jurisdictions cited by the Burrells, although we reach a different result. *See Cope v. Inhabitants of Town of Brunswick* (1983), Me., 464 A.2d 223, 227 (the delegation of power to determine if a use will comply with health, safety, and public welfare is improper unless the local board is given guide-

lines for determining which characteristics are detrimental or injurious); *Waterville Hotel Corp. v. Board of Zoning Appeals* (1968), Me., 241 A.2d 50, 52 (legislative body may specify conditions under which certain uses may exist and may delegate discretion in determining whether or not the conditions have been met but may not delegate discretion unlimited by legislative stan-

*Trucking Co.* (1980), Ind.App., 409 N.E.2d 655, 660 (ordinance empowering common council to ratify excavation permit was invalid where it lacked any guidelines for the council to follow).

 In their second issue, the Burrells contend that the Commission's findings are not supported by substantial evidence. When a trial court, in the first instance, or an appellate court, on appeal, reviews the decision of an administrative board, the court is bound by the findings of fact made by the board if those findings are supported by substantial evidence. *City of Mishawaka v. Stewart* (1974), 261 Ind. 670, 677, 310 N.E.2d 65, 69. The reviewing court may not conduct a trial *de novo*, and the court may not substitute its judgment for that of the agency. *Metropolitan Board of Zoning Appeals v. Gunn* (1985), Ind.App., 477 N.E.2d 289, 294. The standard for review of agency conclusions of law, however, is different; such deference on the part of the reviewing court is not required and reversal is appropriate if an error of law is demonstrated. *Town of Beverly Shores v. Bagnall* (1992), Ind., 590 N.E.2d 1059, 1061.

In our review of the Burrells' claim that the Commission's findings are not supported by substantial evidence, we may vacate the decision of the Commission " 'only if the evidence, when viewed as a whole, demonstrates that the conclusions reached by the [Commission] are clearly erroneous.' " *Id.* (quoting *City of Indianapolis*

*v. Hargis* (1992), Ind., 588 N.E.2d 496, 498). The Burrells contend that even under this stringent standard of review, they are entitled to reversal.

At the public hearing on the Burrells' proposed subdivision, the Commission heard a presentation in support of the Burrells' application and received the Commission staff recommendation that the application be approved, as the staff found that the proposed subdivision was "in compliance with the Comprehensive Plan of Lake County and [met] all the requirements of [the Ordinance]." (Record, p. 72). The Commission also received evidence from remonstrators which included an affidavit from an engineer, Rowland Fabian. The remonstrators presented their position, along with supporting documentation, that the existing surface water drainage problem was unacceptable and that the proposed development would increase the problem. The engineer's affidavit discussed, inter alia, alleged deficiencies in the Burrells' plan, risks of leaching and biological contamination from the septic system for the subdivision, the existing excess surface water and flooding problem in the area, and his opinion that the development would contribute to drainage and soil erosion problems in the area. In March, 1992, pursuant to the trial court's instruction, the Commission entered findings in support of its conclusion that the Burrells' proposed subdivision would have an adverse effect on the health, safety, and general welfare of the community.[8]

---

dards); *Moriarty v. Planning Board of the Village of Sloatsburg* (1986), N.Y.App.Div., 119 A.D.2d 188, 506 N.Y.S.2d 184 (the health, safety, and general welfare provision is limited by the specific factors a planning board may consider with respect to site plan review; the language does not constitute a grant of the entire police power; planning board has no authority to regulate matters beyond the obvious purpose of the legislation), *appeal denied*, 69 N.Y.2d 603, 504 N.E.2d 396, 512 N.Y.S.2d 1026 (1987).

Other cases cited by the Burrells include: *Carlson v. Town of Beaux Arts Village* (1985), 41 Wash.App. 402, 704 P.2d 663 (town council abused its discretion in denying subdivision application on basis that resulting irregularly shaped lot would not be in the best interests of town's citizens where town council could point to no ordinance prohibiting irregularly shaped

lot), *review denied*, 104 Wash.2d 1020; *Vick v. Board of County Commissioners of Larimer County* (1984), Colo.App., 689 P.2d 699 (board abused its discretion where plat complied with existing zoning regulations and board based its denial on generalities in the master plan).

8. The Commission made the following findings: "The Plan Commission now finds that the report submitted to the Lake County Plan Commission on January 31, 1991 by Fabian Engineers, Inc. of Hammond, Indiana, describes in Paragraphs 3, 4, 5, 6, 7, and 8 of the inadequacies of the proposed development, specifically the lack of mathematical computations to support the conclusions that the project, as currently contemplated, is consistent with good engineering practices and will not cause damage to areas in and around the project within one mile; also

The substantial evidence test is not a test of our agreement with the Commission's findings. Instead, our inquiry focuses on whether the Commission's decision is founded on "a reasonably sound basis of evidentiary support." *City of Evansville v. Southern Indiana Gas and Electric Co.* (1975), 167 Ind.App. 472, 485, 339 N.E.2d 562, 572. Additionally, we should sustain the Commission's decision if it is correct on any of the grounds stated for disapproval of the plan. *Yater,* 614 N.E.2d at 570.

In their argument on this issue, the Burrells dispute the accuracy of the Fabian affidavit, much of which was

That none of the mathematical computations or procedures found and inferred in the State Board of Health Bulletin SE13 of 1988, specifically pages 41 to 46 and 47 to 50 of that manual, have been provided to the Lake County Plan Commission for review regarding this project; also

That even without engineering computations, the following general observations can be made regarding the pending proposal before the Lake County Plan Commission; to-wit

a. That at proposed construction density, no septic system other than a mound system can operate effectively in the soils and topography in question. However, even a mound system is highly questionable and presents a substantial risk of leaching which would result in the biological contamination of both the subdivision and the surrounding areas;

b. That as the area is currently developed, there is already substantial surface water runoff and flooding during normal rains, and during heaving [sic] rains the area around 129th and Tyler Street is subject to excessive water runoff and flooding.

c. That any further development which reduces the existing capacity of the ground to retain surface water (such as the construction of new roadways, large homes, expansive driveways, tennis courts and the like), or the reduction of existing vegetation and trees in the area can only add to the existing problems, further overload the surface water drainage system and contribute to increased soil erosion and related problems of the area.

d. That there is a substantial probability that leaching from the project could result in the biological contamination of any and all of the retention ponds, detention ponds and wetland areas located in the watershed in and about the project; also

That based upon these general observations, your affiant makes the following general recommendations:

1. That the approval of this project be rejected until both the Plan Commission and the public are satisfied that these problems have been specifically addressed by the petitioner and his engineer and that specific solutions and guarantees have been obtained by the Plan Commission.

2. That the detention ponds be expanded to thirty (30) acre feet at Lots 1, 2 and 27 with equalizing tubing of at least 18 inches diameter to insure that the flow from the perimeter swale and associated surface water runoff not revert to the natural watershed due to excessive loading of both the detention ponds and the equalizing pipes.

3. That this project should be referred to the Lake County Drainage Board for evaluation of the construction of a large retention pond in this subdivision and/or the surrounding area which would not only beautify the area, but would also reduce the problem that even existing surface water runoff in this area results in the creation of a 'de facto retention pond' in Dr. Mirich's front yard.

4. That perimeter foliage and trees be required to beautify the project and prevent excessive erosion.

5. That this proposal be referred to the Lake County Highway Department for evaluation of existing surface water flooding problems in and around 129th and Tyler Streets, the impact of additional loading upon the existing problems and recommendations for the correction of the currently existing flooding problem by the county and petitioner.

6. That the excessive slopes exsisting [sic] in the proposed development would cause severe soil erosion problems, without further preventive measures being taken."

(Record, pp. 298–299). Although we agree with the Burrells that the Commission's findings consist almost entirely of verbatim portions of the engineer's affidavit submitted by Rowland Fabian, the Burrells cite no authority for the proposition that the adoption of portions of the Fabian affidavit vitiates the findings.

adopted in the Commission's findings, and question Fabian's expertise. In his affidavit, Fabian states that he is a registered professional engineer and land surveyor in the State of Indiana with over forty years of experience. He further states that in the preparation of his affidavit he reviewed the plans and plats associated with the proposed development, soils studies, U.S. Coast and Geodetic Survey Quadrangle Maps for the area, a federal manual on wetlands conservation, aerial photography of the area, and that he made a personal walking inspection of the project site and surrounding area. In an administrative proceeding involving technical or scientific

evidence such as in this case, it is not our task, nor is it within our area of expertise, to determine the credibility or weight to be given technical evidence such as that found in the Fabian affidavit. *See Board of Medical Registration and Examination of Indiana v. Armington* (1961), 242 Ind. 436, 440, 178 N.E.2d 741, 743, *reh'g denied; Wilfong v. Indiana Gas Co.* (1980), Ind. App., 399 N.E.2d 788, 790. Our role, instead, is to determine whether the evidence before the Commission *taken as a whole* provides a reasonable evidentiary basis for the Commission's determination, and we conclude that it does.

The Commission received evidence from the remonstrators in a variety of forms at the hearing on the Burrells' plan. This evidence included oral testimony; a videotape of the area accompanied by oral explanation; and a three-ring binder containing, among other things, an aerial photograph of the proposed development area and surrounding area, photographs depicting flooding in the area, a photocopy of § V(B) of the applicable subdivision ordinance (discussed *supra*), the engineer's affidavit by Rowland Fabian and accompanying attachments, photocopies of newspaper articles describing flooding and sewage disposal problems in Lake County, and a copy of a street and drainage plan that included soils report information. Our review of this evidence leads us to the conclusion that the Commission's findings are supported by substantial evidence of probative value. *See Metropolitan Development Commission of Marion County v. Camplin* (1972), 153 Ind.App. 622, 288 N.E.2d 569 (photographs, aerial photographs, testimony of expert witness, and testimony of another witness constituted substantial evidence of probable value supporting determination that statutory prerequisites for granting of zoning variance had been satisfied); *Metropolitan Development Commission of Marion County v. Bicknell* (1972), 151 Ind. App. 554, 280 N.E.2d 861 (photographs, plot plan, area map, testimony, and affidavits of absentee owners constituted substantial evidence of probative value to support finding that five prerequisites for

granting of zoning variance had been satisfied).

With reference to the Commission's findings regarding risks of leaching and biological contamination from the septic system for the subdivision (findings "a" and "d"), the Commission had before it the engineer's affidavit from Rowland Fabian. Additionally, attached to the Fabian affidavit was a letter from a Purdue University extension agronomist that discussed septic system design in difficult soils and referenced publications forwarded to Fabian dealing with issues of septic system design and installation. Although, as noted by the Burrells, the extension agronomist wrote:

"Whether or not homes in a development with 'small' lot sizes would have a high percentage of successfully operating systems depends on many factors, including the ability to lower seasonal water tables. It is probably impossible to give more than an impression or an estimate of risk without a thorough evaluation of the site and proposed development."

(Record, p. 526), in the next paragraph, he wrote:

"However, if the majority of soils in the area are Morley, Pewamo, Wallkill and Carlisle then the area has a high risk of waste disposal problems."

(Record, p. 526). The street and drainage plan submitted to the Commission by remonstrators reveals that a significant percentage of the Burrells' property consists of these four problematic soils. With reference to the Commission's findings regarding both existing and anticipated flooding, bad drainage, and excessive surface water (findings "b" and "c"), the Commission had before it the Fabian affidavit, a street and drainage plan, photographs of flooding in the area, photocopies of newspaper articles regarding flooding in the county, and a videotape of the area accompanied by oral explanation.

We conclude that the Commission was presented with substantial evidence that the proposed subdivision presented significant risks of septic system leaching, as well as increased flooding and drainage problems. *See Johnson County Plan Com-*

*mission v. Fayette Building Corp.* (1973), 156 Ind.App. 557, 297 N.E.2d 899 (decision of board of zoning appeals to deny application for special exception to permit construction of a mobile home park was adequately supported by testimony regarding drainage and flooding problems). The Commission had a reasonable evidentiary basis on which to conclude that the subdivision would have an adverse effect on the health, safety, and general welfare of the community, a conclusion from which denial of the preliminary plan must follow under the Ordinance.

The final issue presented for our review is whether the Commission was estopped to deny preliminary plan approval on the basis of adverse effect to the health, safety, and general welfare of the community because the Burrells already had received tentative approval under that same standard.

The Ordinance provides for a three-tier approval process requiring the subdivider to obtain tentative plan approval, preliminary plan approval, and final plat approval. The Ordinance provides that with regard to *both* tentative plan approval and preliminary plan approval the Commission should reject the proposal where the proposed subdivision would have an adverse effect on health, safety, or general welfare. Ordinance §§ IV(A) & (B) (Record, pp. 407(a), 409(a)).

In support of their position, the Burrells again cite *Sheffield Developers*. In that case, the developer submitted an application for preliminary plat approval for consideration by the plan commission at four separate public hearings. Following each of three public hearings, the plan commission failed to approve the preliminary plat. Each time, the developer revised the plat to conform to the plan commission's stated requirements and suggestions. When the preliminary plat was not approved at the fourth hearing, the developer sought relief from the trial court. The trial court ruled that the plan commission was estopped to deny approval of the application at the fourth public hearing based on the developer's noncompliance with a particular sec-

tion of the subdivision ordinance where the plan commission had not noted the noncompliance as a basis of negative votes following the third public hearing on the plan. This court affirmed the trial court's ruling, noting that the plan commission had a duty to inform the developer of all reasons for negative votes at the first reasonable opportunity. 181 Ind.App. at 600, 394 N.E.2d at 185. In its discussion of a related issue, the court noted its belief that "the trial court's findings evidence a course of conduct by the Plan Commission to 'draw out' the Developer's plat approval as long as possible by citing new and different reasons for negative votes." *Sheffield Developers*, 181 Ind.App. at 598, 394 N.E.2d at 184. In the present case, the Burrells were denied preliminary plan approval following one public hearing and one vote by the Commission. Unlike the subdivider in *Sheffield Developers*, the Burrells have not been subjected to repeated public hearings and repeated Commission votes resulting in nonapproval. The Burrells' position amounts to a contention that they were entitled to the reasons for negative votes prior to the votes being cast. We find the Burrells' reliance on *Sheffield Developers* to be unpersuasive.

The Burrells also assert that they were misled by the Commission. They argue that "if the [Commission] wanted to reject the subdivision on the basis that it would adversely effect [sic] the health, safety, and general welfare, it was required to do so at the time of the tentative approval." Appellant's brief, p. 49. Landowners are charged with knowledge of relevant statutory provisions affecting the control or disposition of their property, and this rule applies equally to zoning ordinances. *Wesner v. Metropolitan Development Commission of Marion County* (1993), Ind. App., 609 N.E.2d 1135, 1137–1138 n. 2 (estoppel cannot be applied where the facts are equally known by or accessible to both parties; doctrine of equitable estoppel ordinarily cannot be used against governmental entities unless the public interest is threatened by the government's conduct). As noted above, the Ordinance specifically requires the Commission to deny approval

of both tentative plans and preliminary plans where the development would have an adverse effect on the health, safety, or general welfare of the community. Thus, the Burrells were on notice that their preliminary plan could be rejected based on such considerations even after they had received tentative approval. Their estoppel argument must fail. *Id.*

For all of the foregoing reasons, we affirm.

AFFIRMED.

BARTEAU, J., concurs.

RUCKER, J., concurs in result.