**FULTON COUNTY ADVISORY PLAN COMMISSION, Appellant,**

v.

**Gregory L. GRONINGER and Annette K. Groninger, Appellee.**

**No. 25A03–0301–CV–22.**

Court of Appeals of Indiana.

June 23, 2003.

Bryon D. Knight, Elizabeth A. Knight, Knight, Hoppe, Kurnik & Knight, L.L.C., Schererville, IN, Attorney for Appellant.

Richard K. Helm, Rockhill Pinnick LLP, Warsaw, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

The Fulton County Advisory Plan Commission ("the Plan Commission") appeals the Fulton Circuit Court's grant of sum-

mary judgment in favor of Gregory and Annette Groninger ("the Groningers"), which ordered the Plan Commission to approve the Groningers' primary plat application. The Plan Commission raises two issues, which we restate as:

I. Whether the trial court erred when it granted summary judgment and ordered the Plan Commission to approve the Groningers' primary plat application because the Fulton County Zoning Ordinance Vision Clearance Standards did not constitute valid or concrete standards; and,

II. Whether the trial court erred when it granted summary judgment and ordered the Plan Commission to approve the primary plat application because it found that the Groningers met the standards of the Fulton County Zoning Ordinance and proved that the proposed roadway entrance was safe.

Because we find that the Fulton County Zoning Ordinance Vision Clearance Standard at issue is not sufficiently definite and that the Groningers met the standards of the Zoning Ordinance that are sufficiently definite, we affirm.[1]

**Facts and Procedural History**

The Plan Commission is the governing body for land use regulation in Fulton County, Indiana and is charged with the authority to approve or deny primary plat applications. The Groningers submitted a primary plat application to the Plan Commission seeking approval to construct Rolling Acres Estates Subdivision, which included a roadway entrance to the subdivision that would enter and exit onto County Road 300 South ("300 South"), which is a highway. Primary plat applications submitted to the Plan Commission

must comply with the Fulton County Zoning Ordinance ("Zoning Ordinance") and the Subdivision Control Ordinance. Contained within the Zoning Ordinance is Article 5.13, the Vision Clearance Standards. It states in pertinent part:

The intent of Vision Clearance Standards are [sic] to provide for a safe vehicular and pedestrian transportation system. The visibility at intersections, driveways, curb cuts, and entrances are particularly important for the safe movement of vehicles and pedestrians.

The following Vision Clearance Standards apply to all intersections, drive[s], curb cuts, and entrances.

A. *No curb cut or drive shall be permitted when:*

a. A minimum of 225 feet from the crest of a hill where the slope on either side of the crest is 6% or greater, and the speed limit is 45 MPH or greater.

b. A minimum of 175 feet from the crest of a hill where the slope on either side of the crest is 6% or greater, or the visibility is determined to be impaired by the Zoning Administrator, and the speed limit is 45 MPH or less.

c. *The visibility to or from the desired location is determined to be impaired by the Zoning Administrator.*

Appellant's App. p. 129 (emphasis added).

On July 9, 2001, the Plan Commission held a public hearing to determine if the Groningers' primary plat application met the requirements of the Zoning Ordinance and the Subdivision Control Ordinance. At this hearing, members of the Plan Commission expressed concern about the safety of the roadway entrance on highway 300 South. Appellant's App. pp. 323–24. The

---

1. The Appellee's motion to strike the Appel- lant's reply brief is hereby denied.

Plan Commission tabled the issue until the next regularly scheduled meeting in order to investigate whether the roadway entrance met the Vision Clearance Standards.

The primary plat application was again discussed at the August 13, 2001 meeting of the Plan Commission. During the public hearing, the Zoning Administrator reported that Wightman Petrie, an engineering firm, had conducted a preliminary examination of the proposed roadway entrance on 300 South, and its initial professional opinion was that the entrance was not 225 feet from the crest of the hill and that it would be a vision clearance hazard. Appellant's App. p. 353. The Plan Commission approved the primary plat application with the condition that the roadway entrance on 300 South meet the Zoning Ordinance and Subdivision Control Ordinance standards. Appellant's App. p. 362.

The Zoning Ordinance also requires that within three months after the primary plat application has been approved by the Plan Commission, the petitioner must submit the primary plat for signature by two officers of the Plan Commission. Appellant's App. p. 217. On September 10, 2001, the Plan Commission met and discussed whether the Groningers' primary plat application could be signed. The Plan Commission agreed that the roadway entrance of the Groningers' primary plat application had now met the first two requirements of the Vision Clearance Standards of the Zoning Ordinance, but that it had not yet satisfied the third requirement. Appellant's App. p. 386. The Plan Commission did not agree to sign the plat at that time and decided to hire an engineering firm to examine the entrance to determine if it met the third requirement of the Vision Clearance Standards of the Zoning Ordinance. Appellant's App. pp. 372, 377, 381.

After this meeting, Wightman Petrie submitted an engineering report regarding the entrance on 300 South. The report stated that the proposed location of the entrance complied with the current Zoning Ordinance, Article 5.13 because it was located 280 feet from the crest of the hill. Appellant's App. p. 399. It also stated that the proposed location did not comply with the American Association of State Highway and Transportation Officials ("AASHTO") Design Standards, and therefore, it created hazardous driving conditions. Appellant's App. p. 401. On September 26, 2001, the Zoning Administrator sent a letter to the Groningers stating that their primary plat application did not comply with the Vision Clearance Standards of the Zoning Ordinance and that a newly engineered plat would have to be submitted for signature. Appellant's App. p. 37.

On October 25, 2001, the Groningers filed a complaint requesting the trial court to order a mandate requiring the approval of the primary plat application by endorsement by two members of the Plan Commission. The Groningers filed a motion for summary judgment on August 8, 2002, and the trial court granted this motion on December 5, 2002. The Plan Commission now appeals.

## Standard of Review

■ Initially, we note that a mandate is an extraordinary remedy, which is expressly provided for by statute and which may be sought against a public officer to compel performance of any act which the law specifically requires or any duty resulting from any office, trust, or station. Ind.Code § 34–27–3–1 (1999). "A party requesting mandate must have a clear and unquestioned legal right to the relief sought and must show that the respondent has an absolute duty to perform the act demanded." *Brant v. Custom Design*

*Constructors Corp.,* 677 N.E.2d 92, 95 (Ind.Ct.App.1997) (citations omitted).

 Summary judgment is a procedural means to halt litigation when there are no factual disputes and to allow the case to be determined as a matter of law. *Langman v. Milos,* 765 N.E.2d 227, 233 (Ind.Ct.App.2002), *trans. denied.* The moving party bears the burden of showing that there are no genuine issues of material fact. *Id.* If the moving party meets this burden, the burden shifts to the non-moving party to present facts showing the existence of a genuine issue for trial. *Id.* The standard of review for the grant or denial of a motion for summary judgment on appeal is the same as that used in the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. *Corr v. Am. Family Ins.,* 767 N.E.2d 535, 537 (Ind.2002). Neither the trial court nor the reviewing court may look beyond the specifically designated evidence to make its decision. *Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp.,* 759 N.E.2d 239, 244 (Ind.Ct.App.2001), *trans. denied.* All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Corr,* 767 N.E.2d at 538.

## · I. Validity of the Ordinance

 In order to be valid, an ordinance must be definite, precise, and certain in expression. *Wolff v. Mooresville Plan Comm'n,* 754 N.E.2d 589, 593 (Ind.Ct.App. 2001) (citing *Burrell v. Lake County Plan Comm'n,* 624 N.E.2d 526, 529 (Ind.Ct.App. 1993), *trans. denied* (quoting *Carpenter v. Whitley County Plan Comm'n,* 174 Ind. App. 412, 419, 367 N.E.2d 1156, 1161 (1977))). We will not construe an ordinance so as to defeat its purpose "if it is sufficiently definite to be understood with reasonable certainty." *Id.* Whenever pos-

sible, ordinances should be interpreted so as to uphold their validity. *Id.* "A standard must be written with sufficient precision to give fair warning as to what the Commission will consider in making its decision." *Id.* (quoting *Tippecanoe County Area Plan Comm'n v. Sheffield Developers, Inc.,* 181 Ind.App. 586, 602, 394 N.E.2d 176, 187 (1979), *trans. denied* ).

The Plan Commission argues that the trial court erred when it granted the Groningers' motion for summary judgment and issued a mandate ordering them to sign the primary plat application. The Plan Commission contends that its decision to condition the approval of the primary plat application on meeting the Vision Clearance Standards of the Zoning Ordinance was based on sufficiently definite standards.

In this case, the Plan Commission relied on Article 5.13 of the Zoning Ordinance, the Vision Clearance Standards, in its denial of the Groningers' primary plat application. In pertinent part they state:

> The intent of Vision Clearance Standards are [sic] to provide for a safe vehicular and pedestrian transportation system. The visibility at intersections, driveways, curb cuts, and entrances are particularly important for the safe movement of vehicles and pedestrians.

> The following Vision Clearance Standards apply to all intersections, drive[s], curb cuts, and entrances.

> A. *No curb cut or drive shall be permitted when:*
>> a. A minimum of 225 feet from the crest of a hill where the slope on either side of the crest is 6% or greater, and the speed limit is 45 MPH or greater.
>> b. A minimum of 175 feet from the crest of a hill where the slope on either side of the crest is 6%

or greater, or the visibility is determined to be impaired by the Zoning Administrator, and the speed limit is 45 MPH or less.

c. *The visibility to or from the desired location is determined to be impaired by the Zoning Administrator.*

Appellant's App. p. 129 (emphasis added).

The Groningers contend that the Plan Commission did not utilize sufficiently definite standards when determining whether to approve their primary plat application. They claim that parts (a) and (b) on the Vision Clearance Standards constitute clear standards of the minimum distances that an entrance can be located from the crest of a hill, and that the Plan Commission's argument that these standards are "something which can't be less, but may be more" and that the " 'may be more' [quality] is discretionary with the Plan Commission from time to time, without any basis for determining when or how." Br. of Appellee at 16.

The Groningers submitted a primary plat application seeking approval to construct Rolling Acres Estates Subdivision, which included a roadway entrance on 300 South. On July 9, 2001, the primary plat application's approval was discussed during a public hearing at the Plan Commission's meeting. The issue of approval was tabled until the next meeting held on August 13, 2001. At the August 13 meeting, although some of the Plan Commission members expressed concern about the safety of the 300 South entrance, the plat was approved with the condition that the roadway entrance on 300 South meet the Zoning Ordinance and Subdivision Control Ordinance standards. On August 20, 2001, a plat drawing, which contained a reengineered entrance on 300 South that was further than 225 feet from the crest of the hill, was submitted.

At the September 10, 2001 meeting, the Plan Commission did not sign the primary plat application because its members stated that the third criterion of the Vision Clearance Standards had not been met because the Zoning Administrator felt that the entrance was still a vision clearance hazard even though the first two criteria had been met and the entrance was more than 225 feet from the crest of the hill. Upon the County Attorney's advice, the Plan Commission hired an engineering firm to take measurements at the location of the proposed entrance and to provide objective evidence to support the Zoning Administrator's decision. The County Attorney correctly recognized that such objective evidence was needed. Appellant's App. pp. 369, 386. Subsequently, Wightman Petrie submitted a report that stated that even though the entrance complied with Article 5.13 of the Zoning Ordinance because it was located 280 feet from the crest of the hill, the entrance did not meet AASHTO standards and therefore, created hazardous driving conditions. The report also suggested that the Zoning Ordinance should be amended so that the Vision Clearance Standards comply with the AASHTO Design Standards. Appellant's App. p. 401.

Thus, the precise question before us is whether the third criterion of the Vision Clearance Standards is sufficiently definite. The Plan Commission relies on three cases to contend that public safety language in a specific section of the zoning ordinance constitutes a concrete standard. In the first, *Brant v. Custom Design Constructors Corp.*, 677 N.E.2d 92 (Ind.Ct. App.1997), this court considered sections of the Boone County Zoning Ordinance. We found a preamble section of the zoning ordinance at issue to be general and to

contain "no specific standards by which a proposed plat may be judged." *Id.* at 98. However, we also concluded that a later, more specific section of the ordinance that contained public safety language did constitute a definite standard because the language set forth specific requirements that provided the public sufficient notice as to what would be required. *Id.* at 99. This section stated:

No land shall be subdivided for residential use unless *adequate access to the land over approved streets or thoroughfares exists or will be provided* by the subdivider, or if such land is considered by the Commission to be *unsuitable for such use by reason of flooding or improper drainage, objectionable earth and rock formations topography, or any other feature harmful to the health and safety of potential residents and the community as a whole.*

*Id.* at 98–99 (emphasis added).

In *Burrell v. Lake County Plan Commission,* 624 N.E.2d 526 (Ind.Ct.App. 1993), this court reviewed a section of the zoning ordinance that directed the Commission to deny plat applications if they did not comply with the zoning ordinance or if "the proposed subdivision would adversely affect the health, safety, or general welfare of the County." *Id.* at 528. However, another section of the ordinance stated:

1. *Suitability of Land.* No land shall be subdivided which is *unsuitable for subdivision by reason of flooding, collection of ground water, bad drainage, adverse earth or rock formation or topography, or any feature likely to be harmful to the health, safety, or welfare of the future residents of the subdivision or of the community.* Such lands shall not be considered for subdivision *until such time as the conditions*

*causing the unsuitability are corrected.*

*Id.* at 530 (emphasis added). We concluded that because the health, safety, and general welfare language did not stand alone and because another section of the ordinance instructed the Commission and the public on the kinds of adverse effects that would cause a denial of an application, that the section provided sufficient notice to the public of the considerations that would be made by the Commission. *Id.* at 530.

In *Wolff v. Mooresville Plan Commission,* 754 N.E.2d 589 (Ind.Ct.App.2001), this court concluded that an ordinance which contained a section with health and safety language gave sufficient notice to the public of what the Commission would consider when reviewing a plat application for a subdivision. *Id.* at 593. The pertinent section stated:

[N]o land shall be subdivided for residential use *unless adequate access to the land over improved streets or thoroughfares exists or will be provided* by the subdivider, or if such land is considered by the commission to be *unsuitable for such use by reason of flooding or improper drainage, objectionable earth or rock formation, topography, or any other feature harmful to the health and safety of possible residents and the community as a whole.*

*Id.* 592–93 (emphasis added). We concluded that the ordinance gave sufficient notice to the public because the ordinance listed several things that would be considered when the Commission decided to approve or deny a plat application. *Id.*

All three of these cases are distinguishable from the present case. In *Brant, Burrell,* and *Wolff* the ordinances at issue were found to contain sufficiently definite standards because they all set forth specific requirements or listed things that would

provide adequate notice to the particular Commissions and their constituents of what would be considered in the approval or denial of a plat application.

■ Here, Article 5.13 of the Zoning Ordinance contains three criteria that constitute the Vision Clearance Standards. The first two contain measurable distances and clearly provide adequate notice of what the Plan Commission would consider in the approval or denial of a primary plat application. The third criterion states only that the application may be denied if the Zoning Administrator deems the visibility to be impaired. No further standards or instructions are provided concerning how the Zoning Administrator is to determine if visibility is impaired or how an applicant can avoid or correct such an impairment. Thus, a member of the public is not given sufficient notice of what the Plan Commission will consider when reviewing a plat application to determine if highway visibility is impaired.

In the present case, after the Groningers contended that the plat application met the first two criteria, the Plan Commission hired Wightman Petrie, an engineering firm, to take measurements of the location of the entrance and make a report on the safety of its location. Wightman Petrie submitted a report of their findings to the Plan Commission and determined that although the entrance indeed met the first two criteria, it created hazardous driving conditions because it did not comply with the AASHTO Design Standards. However, no reference to AASHTO Design Standards appears anywhere in the Zoning Ordinance, and therefore, neither the Groningers nor the general public were given any, much less sufficient, notice that those standards would be used in the review of a primary plat application.

The Plan Commission contends that *Wolff* and *Brant* did not require specific

standards, such as AASHTO, to be mentioned by name when the zoning ordinance required safety. Although those cases may not have required this, they did require that ordinances reviewed contain language providing notice of what the Commission would consider in its decision. *See Wolff,* 754 N.E.2d at 593; *Brant,* 677 N.E.2d at 99. Because the third criterion of the Vision Clearance Standards is the only criterion upon which the Groningers' plat was rejected and because it does not contain sufficiently definite standards to give fair warning of the standards the Plan Commission would consider in its decision, it is not valid. Therefore, the trial court did not err when it granted the Groningers' motion for summary judgment.

## II. Compliance with Ordinance

■ "Approval of a plat which meets the requirements of the applicable ordinance constitutes a ministerial as opposed to a discretionary act." *Brant,* 677 N.E.2d at 96. Thus, it is a ministerial act of the Plan Commission to approve a subdivision plat that meets the adequately specific standards of the subdivision control ordinance, and the Plan Commission does not have any discretion to deny the plat after compliance has been shown. *Plan Comm'n of Harrison County v. Aulbach,* 748 N.E.2d 926, 936 (Ind.Ct.App.2001), *trans. denied.*

As we concluded above, part (c) of the Vision Clearance Standards is not valid because it is not sufficiently definite and does not give the public sufficient notice of what the Plan Commission will consider in its decision as to whether to approve or deny a primary plat application. Therefore, the Groningers only had to meet parts (a) and (b) of the Vision Clearance Standards in order to be in compliance with the Zoning Ordinance and Subdivision Control Ordinance, and they did so.

Here, the speed limit on 300 South was fifty-five miles per hour and the slope of the crest of the hill was six percent. Because the Groningers' proposed entrance on 300 South was located over 225 feet from the crest of the hill (in fact, 280 feet), the primary plat application was in compliance with the enforceable Vision Clearance Standards in the Zoning Ordinance. Therefore, approval of the primary plat application by the Plan Commission was a ministerial act, and the Plan Commission did not have any discretion in the decision. *See Aulbach,* 748 N.E.2d at 936. The trial court did not err when it issued a mandate ordering the Plan Commission to sign the Groningers' primary plat application.

### Conclusion

The trial court did not err when it granted the motion for summary judgment and issued a mandate ordering the Plan Commission to sign the primary plat application because part (c) of the Vision Clearance Standards is invalid because it is not a sufficiently definite standard, and the Groningers complied with the remaining parts of the Vision Clearance Standards.

Affirmed.

KIRSCH, J., and MATTINGLY, J., concur.